Affirmed and Memorandum Opinion filed July 25, 2006















Affirmed and Opinion filed July 25, 2006.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-04-01040-CR

____________

 

LEON ERIC LOPEZ, Appellant

 

V.

 

THE STATE OF TEXAS , Appellee

 





 

On Appeal from the 232nd
District

Harris County,
Texas

Trial Court Cause No. 962,070

 





 

O P I N I O N

Appellant, Leon Lopez, appeals his conviction for
injury to a child.  See Tex.
Pen. Code Ann. ' 22.04 (Vernon
Supp. 2005).  A jury sentenced appellant to 30 years= confinement in
the Texas Department of Criminal Justice, Institutional Division. 
Appellant presents five issues for appellate review.  We affirm.  

Factual Background

 

Complainant, Zharia
Lopez (AZharia@), a four-week old
infant, died on September 15, 2003 from a skull fracture and brain hemorrhage.  Zharia was born on August 13, 2003 to her mother, Jessica Gabrielides, and her father, appellant Leon Lopez.  Gabrielides and appellant met in the summer of 2000 before
their last year in high school.  Almost immediately after graduation,
appellant joined the Navy.  He and Gabrielides
kept in touch while he was gone and continued their relationship after he
returned.  They dated on and off, and even lived together for a short time,
at which point Gabrielides became pregnant with Zharia.  They continued to have an Aon again, off again@ relationship
while Gabrielides was pregnant.  Gabrielides had been living with her sister until one month
before Zharia was born, when she and appellant moved
into an apartment together.  

After Zharia was
born, appellant remained virtually unemployed while Gabrielides
took maternity leave.  Gabrielides planned
to return to work after four weeks of leave, rather than six, because they
needed the income.  She planned to return to work on the morning of Zharia=s death.  Throughout the one month of
Zharia=s life, only Gabrielides got up with Zharia
for her nightly feedings.  Appellant never got up to feed or change Zharia during the night.  

 

On the morning of September 15, Gabrielides
testified she got up to feed Zharia at 1:30 A.M., and
Zharia quickly went back to sleep.  At
approximately 4:30 A.M., Gabrielides woke up again to
feed and change Zharia.  She went into the
living room and changed her.  Then, appellant came out to the living room
with his blanket and pillow, and he offered to feed Zharia
since Gabrielides had to get up in the morning for
her first day back to work.  Gabrielides
testified she watched appellant make a bottle for Zharia
and begin to feed her.  Gabrielides then went
back to bed.  Appellant testified he fed Zharia,
put her to sleep in her swing, and went to sleep on the couch/futon in the
living room.  Gabrielides testified appellant
woke her up at approximately 6:00 A.M. because something was wrong with Zharia.  When Gabrielides
saw Zharia, she was in her swing, slumped over, and
not breathing.  Gabrielides testified Zharia looked blue and had two broken blood vessels around
her nose.  Appellant turned on the lights, and Gabrielides
told him to call 9-1-1.  They attempted CPR, and a neighbor came to assist
with CPR, as well, until medical personnel arrived.  

Medical personnel quickly transported Zharia
to an ambulance and continued to perform CPR on her for approximately one and a
half hours.  The emergency room physician at Houston Northwest
 Medical Center
declared Zharia dead upon arrival at 7:25 A.M.

Pursuant to department policy, Sergeant Wayne Wendell of
the Houston Police Department began to investigate Zharia=s death as a potential
homicide.  When Sergeant Wendell arrived at the hospital, he saw multiple
bruises on Zharia=s head and
neck.  He had an informal discussion with Gabrielides
and appellant to inquire about the bruises.  He then took formal
statements from them at the police station.  Both of their statements were
consistent about the last time Gabrielides got up to
feed and change Zharia, that Gabrielides
went back to bed, that appellant stayed up to feed Zharia,
and that appellant woke up Gabrielides at approximately
6:00 A.M. because Zharia was non-responsive.  

 

The medical examiner, Dr. Roger Milton, testified about the
exam he performed on Zharia the next day, September
16.  Milton
testified there were twenty-nine injuries to Zharia=s head and scalp,
and the cause of death was a brain hemorrhage and
skull fracture.  He found a three and one half inch fracture to Zharia=s skull, which on an infant of her age
amounts to almost the entire length of one side of the skull.  He
testified there was no evidence of oxygen deprivation, so Zharia=s death occurred
quickly after the injuries were inflicted.  Milton gave detailed testimony about rigor
mortis[1]
and lividity[2]
in order to approximate the time of death.  He testified significant signs
of lividity and rigor mortis should be seen by four
hours after death, and because none of those were present when Zharia was brought into the emergency room, Zharia could not have died as early as 1:30 to 2:00 A.M. 
He could not, however, pinpoint an exact time of death because of many varying
factors.

After learning of Zharia=s cause of death
and assessing the statements given by both appellant and Gabrielides,
in which both stated appellant was the last person to see Zharia
alive, Sergeant Wendell arrested appellant.  Appellant was charged with
capital murder, but the jury convicted appellant of the lesser included offense
of injury to a child.  

Discussion

Appellant presents five issues on appeal:  (1) the
trial court erred in admitting prior unajudicated bad
acts into evidence; (2) the trial court erred in admitting hearsay testimony,
denying appellant his right to confrontation; (3) the trial court erred in
limiting the cross-examination of State=s witness Sergeant
Wendell; (4) the trial court erred in allowing the State to force appellant to
rule on the veracity of other witnesses; and (5) appellant was denied effective
assistance of trial counsel.  

I.                   
Prior Unajudicated Bad Acts

 

In appellant=s
first issue, he contends the trial court erred in admitting his prior unajudicated bad acts into evidence.  Specifically,
appellant argues the State, through Gabrielides= testimony,  sought to show his bad acts and bad character. 
Appellant challenges the following testimony: (1) while engaged to Gabrielides, appellant dated other people; (2) appellant
only served a year and a half of his four-year Navy enlistment; (3) when Gabrielides told appellant he was the father of her unborn
child, appellant asked if the child was in fact his; (4)  appellant cried
while at Navy Boot Camp; (5) appellant told Gabrielides
the baby was not his, and she could get an abortion or give the baby up for
adoption; (6) appellant argued with Gabrielides about
breast feeding the baby and kicked and broke a glass table in their home during
that argument; (7) appellant made demands for sex with Gabrielides
before she was pregnant; (8) appellant made demands for sex with Gabrielides during her pregnancy; and (9) appellant made
demands for sex with Gabrielides three weeks after
she gave birth, even though Gabrielides= doctor advised her not to
engage in sex in the weeks immediately following the baby=s birth.  Appellant
argues this evidence is irrelevant, its probative value is outweighed by its
prejudicial effect, and it is inadmissible character evidence.  

First, appellant waived consideration of his first three
evidentiary complaints because he failed to object in any manner.  See
Tex. R. App. P. 33.1(a); Tex. R. Evid. 103(a)(1).  We do not consider those complaints.  

Second, the state contends appellant waived review of
any complaint under Texas Rule of Evidence 404(b) because appellant failed to
object at trial on those grounds.  The Court of Criminal Appeals allows review
under 404(b) even though an appellant does not precisely recite rule 404(b)
when making the objection to the trial court.  Montgomery v. State,
810 S.W.2d 372, 387 (Tex. Crim. App. 1991) (op. on reh=g). 
A relevancy objection Aought
ordinarily . . . be sufficient under the circumstances to apprise the trial
court of the nature of the complaint.@  Id.  However, if the
circumstances do not apprise the trial court of the
nature of the complaint, a relevancy objection alone is not sufficient to
preserve error under rule 404(b).  See Medina v. State, 7
S.W.3d 633, 643 (Tex. Crim. App. 1999). 
An objection stating one legal theory may not be used to support another legal
theory on appeal.  Camancho v. State, 864 S.W.2d 524, 533 (Tex. Crim.
App. 1993).  Here, appellant made only relevancy objections
concerning complaints four and five; therefore, we consider only whether those
complaints are relevant, and we do not consider whether the trial court=s admission of them
violated rule 404(b).  For the remaining complaints, appellant clearly
made a relevancy objection, and during the bench conference, both parties and
the trial court discussed these events in terms of extraneous offenses by
specifically identifying them as such during their discussion.  Therefore,
for the final four complaints, it was apparent from the context of the
surrounding record that appellant raised relevancy and 404(b) objections, and
we review those complaints accordingly.

 

Finally, appellant contends the complained of evidence
violates Texas Rule of Evidence 403 and is unfairly prejudicial.  A rule
403 objection is not implicitly contained in relevancy or 404(b) objections;
rather, a specific rule 403 objection must be raised
to preserve error.  Montgomery,
810 S.W.2d at 388.  Appellant only raised a rule
403 objection concerning complaint six, which concerns the statements about Gabrielides=
breast feeding of Zharia that led to appellant
kicking and breaking a table.  Thus, appellant only preserved error under
rule 403 for that complaint.  

A.                
Relevancy

Relevant evidence is any evidence having any tendency to
make the existence of any fact of consequence more or less probable than it
would be without the evidence.  Tex.
R. Evid. 401.  All relevant evidence is admissible, and evidence
that is not relevant is inadmissible.  Tex.
R. Evid. 402.  We review the trial court=s decision to admit evidence under an abuse of
discretion standard.  Montgomery,
810 S.W.2d at 391.  

 

The State contends the evidence at issue here is relevant
because it tends to show appellant=s
motive for killing his daughter.  We agree.  Evidence showing motive
to commit murder is a significant circumstance indicating guilt, and it is
therefore relevant and admissible.  See Guevara v. State, 152 S.W.3d 45, 50 (Tex.
Crim. App. 2004).  Throughout its case against
appellant, the State sought to show appellant had disdain for Zharia and he saw her as interfering with his relationship
with Gabrielides.  Testimony about whether
appellant cried when he saw Gabrielides while he was
at Navy Boot Camp tends to show what his relationship with Gabrielides
was like before she became pregnant.  Testimony about appellant=s sexual relationship with Gabrielides before, during, and after her pregnancy tends
to show how appellant=s
physical relationship with Gabrielides deteriorated
after she became pregnant and gave birth to Zharia. 
Testimony about appellant=s
indifference about whether Gabrielides kept the baby
or not and an argument about Gabrielides breast
feeding Zharia tends to show appellant=s apathy or malice towards Zharia, as well as his inability to manage anger.  All
of this evidence supports the State=s
theory about appellant=s
motive.  Therefore, appellant=s
complaints about relevancy are overruled. 

B.                
Other Crimes, Wrongs, or Acts

Although relevant, evidence of other crimes, wrongs, or
acts is not admissible to prove the character of a person in order to show
action in conformity therewith.  Tex.
R. Evid. 404(b).  Evidence of other
crimes, wrongs, or acts may be admissible if it has relevance apart from the
tendency to prove conduct in conformity with character, such as proof of
motive, opportunity, intent, preparation, plan, knowledge, identity, or absence
of mistake or accident.  Id. 
Once an appropriate objection has been lodged, the proponent of the evidence
must satisfy the trial court that the evidence has relevance apart from proving
character  conformity.  Montgomery, 810
S.W.2d at 387.  

We only consider whether the testimony about appellant=s sexual encounters with Gabrielides and appellant=s
argument with Gabrielides that led to the breaking of
a glass table are excluded under rule 404(b) because that is the only
complained of evidence for which appellant preserved error.  Appellant contends
the bad character evidence in this case turned the trial=s focus away from who killed Zharia and towards Awho=s the bum?@  We disagree
with appellant=s
characterization of this evidence.  As discussed previously, evidence of
other crimes, wrongs, or acts of the defendant are admissible if such evidence
is relevant to show motive.  See Tex.
R. Evid. 404(b).  Having previously held
all evidence complained of by appellant tends to show appellant=s motive for killing Zharia, we hold the specific evidence of the sexual
relationship between appellant and Gabrielides and of
the argument leading to appellant=s
breaking a glass table is admissible under 404(b).  

C.                
Rule 403

 

Appellant also argues the complained of evidence should
have been barred by rule 403.  We only address whether evidence of the
argument appellant had with Gabrielides about breast
feeding Zharia that led to appellant kicking and
breaking a glass table was barred by rule 403 because this is the only
complained of evidence about which appellant raised a rule 403 objection in the
trial court.  Appellant contends this evidence enhanced the State=s ability to make the jury
believe that if appellant would break a coffee table when angry, he would be
more likely to beat a child to death.  When a rule 403 objection is
raised, the trial court weighs the probative value of the evidence against its
potential for unfair  prejudice.  Montgomery, 810 S.W.2d at 389.  This means trial court should favor
admission in close cases.  Id. 
Absent an abuse of discretion, we will not disturb the trial court=s decision.  Id. at 390.  When reviewing whether a trial court abused
its discretion in conducting a rule 403 balancing test, we consider the Montgomery-Mozon factors.  Manning v. State, 114
S.W.3d 922, 926 (Tex.
Crim. App. 2003).  

In considering the first factor, the court asks how
compelling the extraneous offense or bad acts evidence serves to make a fact of
consequence more or less probable.  Id. 
In this circumstantial case, no forensic evidence was presented to the jury
which directly linked appellant to Zharia=s death.  Evidence
which shows appellant=s
motive as to why he may have forcefully struck Zharia
in the head was important to the State=s
case.  After the trial court overruled appellant=s objection, appellant testified he broke the
coffee table because he was frustrated about their argument over breast feeding
Zharia and did not want to take his frustration out
on Gabrielides.  In addition, medical experts
testified that the blow to Zharia=s head was caused by
extreme force equivalent to dropping her from a two story building, a car
crash, or even slamming her head against an immobile object.  Considering
the violent nature of this crime, evidence that the argument leading to the
breaking of the table was about feeding Zharia, and
the argument took place only four days before Zharia=s death, this evidence was
critical for the State=s
case against appellant.  

 

The second factor is the potential the other offense or
bad acts evidence has to impress the jury in some irrational but indelible
way.  Id. 
The concern here is the danger of unfair prejudice that Aspeaks to the
capacity of some concededly relevant evidence to lure the factfinder
into declaring guilt on a ground different from proof specific to the offense
charged.@  Id.
at 928.  The act at issue was appellant=s
conduct during an argument with Gabrielides B kicking and breaking a
glass table.  While this evidence, like most evidence introduced by the
State, was obviously prejudicial to appellant because Gabrielides
testified she was scared and ran from the apartment with her newborn baby, this
evidence was not unfairly prejudicial to such an extent that the jury would be
influenced in some indelible way to convict appellant simply because of this
event.  

The third factor is the time the proponent requires to develop the evidence, during which the jury will be
distracted from consideration of the indicted offense.  Id. at 926.  The guilt phase of this trial lasted five
days.  All testimony from Gabrielides, Gabrielides=
father, and appellant about this argument took approximately eight pages of the
guilt/innocence record, which consisted of over 1,000 pages.  This
complained of testimony consumed only a small fraction of time as compared to
the entire body of evidence.  

The fourth factor is the force of the proponent=s need for this evidence to
prove a fact of consequence, i.e., whether the proponent has other probative
evidence available to help establish a fact, and whether this fact relates to
an issue in dispute.  Id. 
The State sought to show appellant, who could become easily enraged and who was
motivated by his disdain for his infant child, killed the baby.  The State
presented no other evidence of appellant=s
temperament for the time period immediately preceding the baby=s death, or other evidence
suggesting why appellant may have committed this crime.  

We find the four Montgomery-Mozon
factors all weigh in favor of admissibility.  Thus, the trial court did
not abuse its discretion in admitting the State=s
evidence about the argument between appellant and Gabrielides. 


For these reasons, we overrule appellant=s first issue. 

II.                
Hearsay

 

In appellant=s
second issue, he contends the trial court erred in admitting hearsay offered to
prove Zharia=s
cause of death, which denied appellant his right to confront the declarant.  Appellant contends admission of this
evidence violated Crawford v. Washington, 541 U.S.
36, 124 S. Ct. 1354, 158 L. Ed. 177
(2004).  During the State=s
direct examination of Gabrielides, the prosecutor
elicited testimony from her about how she first learned the police suspected
appellant of killing Zharia.  Gabrielides testified her parents needed to tell her
something important on the day after Zharia=s death.  Defense
counsel objected to hearsay.  At the bench, the prosecutor argued he was
seeking to show Gabrielides= reaction to learning that the police
suspected her child was murdered and not to prove the truth of the
matter.  The prosecutor=s
argument was, ABeing
offered to prove up how the person died.  Died of a
homicide.  To show that it occurred and her reaction to it.@ 
The trial court overruled appellant=s
objection.  The prosecutor may have intended the testimony to only show Gabrielides=
reaction to what she learned, but the testimony she gave was actually double
hearsay.  

STATE:
                      
What happened when your parents had you sit down and told you to sit down?

GABRIELIDES:
          They told me to sit down
and my dad looked at me and I said I don=t
have to tell you this [sic] and I had already started screaming no and he
said they think [appellant] killed your baby. 

STATE:                       
Okay.  And what happened?

GABRIELIDES:          
I was screaming and crying and fell to the floor and I was screaming that No,
it=s not true. 
He couldn=t
do this.  How could anybody do that to a beautiful little girl.  I justBI don=t
even remember the rest of the night.  I was just crying the whole night. 

(emphasis added). 

 

The admission or exclusion of hearsay is a matter within
the discretion of the trial court.  See Salazar v. State, 38
S.W.3d 141, 153B54
(Tex. Crim. App. 2001).  We will reverse the trial court=s determination only when
the decision lies outside the zone of reasonable disagreement.  Id.  Hearsay
is a statement, other than one made by the declarant
while testifying at the trial or hearing, offered in evidence to prove the
truth of the matter asserted.  Tex.
R. Evid. 801(d).  Hearsay is not
admissible.  Tex. R. Evid. 802.  A Amatter asserted@ includes any matter explicitly asserted, and
any matter implied by a statement, if the probative value of the statement as
offered flows from declarant=s belief as to the matter.  Tex. R. Evid. 801(c). 
When information is offered for a reason other than to prove the truth of the
matter asserted, the evidence is not inadmissible.  Martinez v. State,
22 S.W.3d 504, 508 (Tex.
Crim. App. 2000).  In a double hearsay
situation, the evidence is admissible only if each part of the combined
statement is covered by an exception to the hearsay rule.  See Tex. R. Evid. 805.  

The first part of the hearsay statement was the
statement to Gabrielides by her parents (Ahe
said . . . .@). 
The second part of the hearsay statement was the statement to Gabrielides=
parents by a police officer that the police suspected appellant of killing Zharia (A.
. . they think [appellant] killed your baby@). 
The record shows the entire context of Gabrielides= conversation with her
parents.  Gabrielides= mother, Hendrienne Switz, testified she learned the results of the autopsy
from Sergeant Wendell, the investigating officer.  After Gabrielides returned to Michelle Machin=s home with appellant, Gabrielides=
parents asked her to tell appellant to leave so Gabrielides
could talk with some visitors about grieving.  After the visitors left, Switz testified she and Gabrielides= father sat down with Gabrielides, and Switz told Gabrielides the results of the autopsy.  Gabrielides=
father also testified Switz told Gabrielides
the results of the autopsy.  Neither of Gabrielides= parents testified about
the contents of the autopsy report or who police believed harmed Zharia.  They both testified about Gabrielides= reaction to the
information.  Based on the context and content of the statement, neither
part of the statement qualifies as an exception to hearsay.  We hold this
complained of testimony was double hearsay, and therefore, the trial court
abused its discretion in admitting this testimony into evidence.  

 

Appellant complains this error also violated his right
to confront witnesses against him.  Appellant=s counsel argued to the trial court that the
statement was hearsay, prejudicial, and double hearsay.  He also argued
experts should give the complained of testimony, not Gabrielides. 
He now contends it was apparent to the trial court through the context of the
objection, argument, and testimony that his objection included the denial of
confrontation.  We disagree.  The context only supports a hearsay
objection, and a hearsay objection will not preserve error on confrontation
grounds.  Paredes v. State, 129 S.W.3d 530, 535 (Tex. Crim. App.
2004).  

The admission of inadmissible hearsay constitutes non-constitutional
harm.[3] 
Yanez v. State, 187 S.W.3d 724, 739 (Tex. App.CCorpus Christi 2006,
no pet.).  Such error is harmless if the appellate court, after
examining the record as a whole, is reasonably assured that the error did not
influence the jury verdict or had but slight
effect.  Tex. R.
App. P. 44.2(b); Johnson v. State, 967
S.W.2d 410, 417 (Tex. Crim. App. 1998). 
Gabrielides=
statement ultimately provided testimony that the police believed appellant
killed Zharia.  Appellant argues that because Gabrielides testified that Athey@ made the statement we
cannot discern who made the original statement, and therefore, the State was
allowed to proffer more evidence before the jury that other authorities
believed appellant committed the crime.  Based on the fact that appellant
was indicted for the crime, and that the police themselves testified during
trial that they believed appellant committed the crime and why,[4] we are
reasonably assured the error did not influence the jury=s verdict.  We overrule appellant=s second issue.  




III.              
Cross-Examination of Sergeant Wendell

In appellant=s
third issue, he contends the trial court erred in limiting his
cross-examination of State=s
witness Sergeant Wendell concerning scratches on Zharia=s face and, thus, violated
his Sixth Amendment right to confrontation.  Appellant sought to show
Sergeant Wendell made up his mind about who the suspect was early in the
investigation when appellant did not display a significant amount of grief over
his daughter=s death,
and having thought so, Sergeant Wendell did not thoroughly investigate the
crime.  Appellant argues the jurors did not have the full benefit of the
defensive theory before them during their deliberations because he was not able
to fully develop this testimony.  

We review the trial court=s
decision to limit a defendant=s
cross-examination for abuse of discretion.  See Love v. State, 861
S.W.2d 899, 903 (Tex. Crim. App. 1993); Stults v. State, 23 S.W.3d 198, 204 (Tex. App.CHouston
[14th Dist.] 2000, pet. ref=d). 
Although our legal system highly regards the right to cross-examine witnesses,
a party must preserve error for appellate review.  See Wright v. State,
28 S.W.3d 526, 536 (Tex. Crim. App.
2000).  A party must object and obtain a ruling from the trial court, or
object to the trial court=s
refusal to rule.  Tex. R. App. P. 33.1. 
A party must also make an offer of proof to establish the substance of the
excluded evidence.  Castillo v. State, 939 S.W.2d
754, 758 (Tex. App.CHouston
[14th Dist.] 1997, pet. ref=d). 


During Sergeant Wendell=s
cross-examination, the record shows defense counsel was questioning Sergeant
Wendell about his investigation and asked a line of questions pertaining to a
scratch on Zharia=s
cheek.  The trial court sustained a relevancy objection by the prosecutor
to two questions asked by defense counsel.  Appellant did not contest the
ruling, or make any attempt to persuade the trial court to rule in his
favor.  Because appellant failed to object at all, let alone on
confrontation grounds, he has waived appellate review of this issue. 




IV.             
Commenting on Veracity of Other Witnesses

In appellant=s
fourth issue, he contends the trial court erred in allowing the State to force
appellant to Arule@ on the veracity of other
witnesses.  Appellant identifies one particular line of testimony during
the State=s
cross-examination of him when the State asked him whether witness Michelle Machin lied during her testimony.  During her
testimony, Machin testified about an incident after Gabrielides gave birth to Zharia
when Gabrielides was feeling ill and Machin and Gabrielides= mother, Hendrianne Switz, came to help Gabrielides.  Machin
testified appellant ignored Machin when Machin tried to tell appellant how to prepare food for Gabrielides, appellant turned up the volume on the
television while Machin and Switz
were at the apartment, and appellant left the apartment by slamming the
door.  Appellant testified he did not hear or remember Machin
talk to him, he did not turn up the volume on the television, and he did not
remember leaving the apartment.  On four occasions during this line of
questioning, the prosecutor asked appellant whether Machin
was lying because he apparently disagreed with her version of the events. 
Appellant complains the trial court erred in allowing the prosecutor to ask
appellant to Arule@ on Machin=s veracity.  

 

The State argues appellant waived review of this issue
because the complaint appellant raises on appeal does
not comport with his objection at trial.  See Tex. R. Evid. 103(a)(1);
Tex. R. App. P. 33.1(a).  The State
represents appellant only objected to a violation of Texas Rule of Evidence
614, the ARule,@
whereby all witnesses, with specific exceptions, are excluded from court during
the testimony of other witnesses.  See Tex. R. Evid. 614.  However, the record shows defense
counsel made several attempts to prevent appellant from answering these
questions by objecting on different grounds each time the question was asked
during this line of questioning.  Defense counsel objected to speculation,
mischaracterization of Machin=s testimony, and violation of the Rule, and
the trial court overruled each of appellant=s
objections.  If appellant had only objected to a violation of the Rule,
the State would be correct, and appellant=s
complaint at trial would not comport with the issue raised on appeal.  

Even though appellant preserved the error for review,
his argument is not persuasive.  The trial court erred by overruling
appellant=s objection
to the prosecutor=s
veracity questions because an attorney may not impeach one witness=s testimony with the
testimony of other witnesses.  Ex parte
McFarland, 163 S.W.3d 743, 755 n. 37 (Tex. Crim.
App. 2005).  When considering the entire record, however, appellant
has not been harmed.  Tex. R. App.
P. 44.2(b); see also McKinney
v. State, 491 S.W.2d 404, 408 (Tex. Crim. App.
1973) (holding, in light of the entire record, defendant was not harmed when
prosecutor asked defendant on cross-examination whether other witnesses were
lying); Mason v. State, 449 S.W.2d 47, 49 (Tex. Crim.
App. 1969).  Throughout the trial, the State presented evidence showing
appellant, rather than Gabrielides, committed this
offense, appellant=s
motive and ability to cause Zharia=s death, Gabrielides=
lack of any motive, their relationship during the time leading up to the night
of Zharia=s
death, and statements and observations by appellant and Gabrielides
to others following Zharia=s death.  Based on 
ample evidence presented by the State, appellant was not harmed when
asked if another witness lied.[5] 
We overrule appellant=s
fourth issue.   

V.                
Ineffective Assistance of Counsel

 

In appellant=s
fifth issue, he contends he was denied effective assistance of counsel when his
trial counsel allowed him to be tried as a bad person, generally. 
Specifically, appellant complains that if this court finds that not every
complaint raised under issue one was properly preserved by objection, then
appellant complains his trial counsel was ineffective by failing to render a
contemporaneous objection each time such evidence was introduced.  

The standard of review for an appellate issue claiming
ineffective assistance of counsel is well settled.  We apply the two-prong
test from Strickland v. Washington, 466 U.S. 668, 687B92, 104 S. Ct. 2052, 2064B67, 80 L. Ed.2d 674 (1984)
as recited in Hernandez v. State, 726 S.W.2d 53, 55 (Tex. Crim. App. 1986).  See Green v.
State, 191 S.W.3d 888, 895 (Tex. App.CHouston [14th Dist.]
2006, pet. filed).  

Appellant does not meet the first prong of Strickland because
the record is undeveloped.  Any allegation of ineffectiveness must be
firmly founded in the record.  Bone v. State, 77 S.W.3d 828, 833 (Tex. Crim.
App. 2002).  When the record is silent about the motivations of counsel,
we cannot conclude counsel=s performance was deficient.  Jackson v. State, 877 S.W.2d 768, 771 (Tex. Crim.
App. 1994).  In such circumstances, appellant fails to rebut the
presumption trial counsel=s decisions were reasonable.  Thompson v. State, 9 S.W.3d 808,
814 (Tex. Crim. App. 1999). 
An appellate court is not required to speculate on trial counsel=s actions when
confronted with a silent record.  Jackson, 877
S.W.2d at 771; McCoy v. State, 996 S.W.2d 896, 900 (Tex. App.CHouston [14th Dist.] 1999, pet. ref=d). 
However, if a silent record clearly indicates no reasonable attorney could have
made such trial decisions, to hold such counsel ineffective is not
speculation.  See Vasquez v. State, 830 S.W.2d 948, 950B51 (Tex. Crim. App.
1992). 

The record contains no explanation as to why defense
counsel objected to some but not all of the State=s proffered
evidence during Gabrielides= testimony. 
Appellate counsel filed a motion for new trial but did not raise ineffective
assistance of counsel as a ground in the motion.  Trial counsel=s failure to
object does not rise to a level such that no reasonable attorney could have
made such trial decisions.  Therefore, we overrule appellant=s fifth issue. 




Conclusion

Having considered and overruled each of appellant=s five issues on
appeal, we affirm the judgment of the trial court. 

 

 

/s/     
John S. Anderson

Justice

 

Judgment rendered and
Opinion filed July 25, 2006.

Panel consists of
Justices Anderson, Edelman, and Frost.

Publish C Tex. R. App. P.
47.2(b).














[1]  Rigor mortis is the stiffening of the joints of
the body after death.  





[2]  Lividity or livor mortis is the postmortem pooling of the blood in the
body due to gravity when the heart no longer pumps blood.  





[3]  Appellant contends the error here is constitutional
because he was denied the right to confront witnesses against him.  We
disagree because appellant did not preserve error on confrontation grounds. 





[4]  Appellant contends Gabrielides= testimony also violates Crawford v. Washington,
541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 177 (2004).  We
disagree.  Gabrielides= use of the word Athey@ is
not as deceptive as appellant argues.  Hendrienne
Switz testified she learned the results of the
autopsy from Sergeant Wendell, the investigating officer, and Sergeant Wendell
testified at trial.  Moreover, Dr. Roger Milton, the medical examiner,
testified about the results of the autopsy and Zharia=s cause of
death. 





[5]  Appellant was also asked on at least five other
occasions whether other witnesses lied during their testimony.  Each time,
the particular facts about which the prosecutor was asking were
different.  At no time after the first line of questioning directed at Machin=s testimony did
defense counsel object to the prosecutor=s
questions.  Therefore, appellant did not preserve error as to those other
questions.