**Jose C. CASTILLO, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 14–95–00932–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

Feb. 6, 1997.

Brian W. Wice, Houston, for appellant.

Carol M. Cameron, Houston, for appellee.

Before YATES, HUDSON and O'NEILL, JJ.

## OPINION

YATES, Justice.

Appellant, Jose C. Castillo, was convicted of driving while intoxicated. Appellant asserts eleven points of error, alleging the trial court erred in 1) excluding potential impeachment evidence against the arresting officer, 2) excluding appellant's expert witness testimony, 3) allowing improper jury argument, and 4) denying appellant's plea of double jeopardy. We affirm the judgment of the trial court.

## I. Background

At trial, appellant testified he was dining at a local restaurant on the night in question. Over the course of the four hour dinner, he drank four beers and two non-alcoholic beers. On his way home, he was stopped by Officer Anthony James Mock, who observed appellant's vehicle weaving. Officer Mock asked him to step out of his car and to perform field sobriety tests. Appellant refused to perform any test. Officer Mock formed the opinion that appellant was intoxicated, and he arrested him. At the police station, appellant refused to take either a breath test or a blood test.

Appellant was charged with driving while intoxicated. The jury found appellant guilty, and the trial court assessed punishment at forty-five days in the Harris County jail, probated for one year, a $350 fine, and sixty hours of community service.

## II. Impeachment Evidence

In his first point of error, appellant argues the trial court erred in excluding from evidence the aggregate, annual overtime income the arresting officer earned by testifying in court. Appellant argues this evidence should have been admitted because it would tend to show the officer's bias, prejudice, and motive to make arrests in marginal cases.

Before trial and outside the presence of the jury, appellant made the following argument to admit the evidence of overtime pay for impeachment purposes:

[W]hen Anthony Mock takes the stand, he's going to testify that he made thirty-five thousand dollars last year being a policeman and twenty thousand dollars in overtime, and we are really trying to find out if that twenty-four, twenty-five thousand dollar overtime was part of the D.W.I. task force scheme where that was his job, his only job, his overtime job. He had no other overtime job and that's what we're trying to determine through the tes-

timony of Mr. Mock in that he has a bias or a motive to arrest people even on marginal cases because on a marginal case, people come to trial, and if he comes to trial he makes money.

The trial court agreed appellant could cross-examine Officer Mock concerning the amount of overtime pay that he would earn for testifying in *this* case. However, the trial court did not agree appellant had a right to cross-examine Officer Mock on the total amount of overtime pay he earned in 1994. In response, appellant offered a document, asserting it proved Officer Mock's income.[1]

> I would also offer into evidence just for the appellate purposes, Defendant's Exhibit No. 1 which is a Tora [Texas Open Records Act] on Anthony J. Mock. And I believe it will show that last year in 1994, he made thirty-five thousand dollars being a policeman, and in 1993, he made almost thirty-seven thousand dollars being a policeman. So in other words, his salary decreased and there must be a reason for that, and I believe the reason for that was so he could stay on regular patrol on the night shift so he could—he can do the court cases.

The trial court dismissed this as a collateral issue with "no probative relevance in the course of the trial" with the exception of allowing evidence of the officer's rate per hour of compensation and the officer's compensation for testifying in this case. Appellant then explained to the court what he expected the evidence to show:

> [J]ust for the record, we would like to proffer that we would expect the evidence to show that Anthony J. Mock made twenty-four thousand dollars in overtime pay and all of that was related to coming to court and testifying, and his salary for 1994 was thirty-five thousand dollars, so a significant part of it was overtime in which it was twenty-four thousand and thirty-seven dollars, and we would proffer to the Court that that would be a motive for him to arrest people on marginal cases, hoping their marginal cases, hoping they will come to trial.

The trial court refused to allow testimony concerning the aggregate amount of overtime earnings. The trial judge stated:

> Well, I'm going to deny it with the exception, as I already have stated on the record, and that is you may inquire of any officer whether or not they are being compensated over and above their regular salary, the specifics of their salary, based on their salary according to the City of Houston, any overtime aggregate amount is not going to be admitted to the jury. The specific compensation rates for overtime may be inquired. In other words, his regular rate is twelve dollars and his overtime is time and a half, then it would be fifteen dollars total for overtime pay, but the aggregate over the year is not to be dealt into from any witness unless otherwise you think it's relevant and then you approach the bench first.

During trial, appellant cross-examined Officer Mock only on the amount of overtime he was earning for appearing in that case. On redirect, the State asked Officer Mock if he was testifying because he wanted to earn overtime. He replied that he was attending court because it is part of his job. In an effort to show Officer Mock's experience, the State also asked how many DWI stops he had made as a police officer, and he testified that he had made over 100. At the conclusion of the State's case, appellant argued the State had opened the door as to Mock's overtime pay by testifying that he made over 100 arrests. The trial court disagreed, indicating the arrests went to Officer Mock's training and experience and not for the purposes of overtime. Appellant did not suggest in his argument to the jury that Officer Mock had a financial interest in making arrests.

■ As a preliminary matter, we must determine whether this point was preserved for review. The State argues appellant failed to preserve this point because he did not make an offer of proof that would specifically show Officer Mock testified against appellant as a result of bias, prejudice, or motive from receiving overtime compensation.

---

1. The trial court indicated that the document would be attached to the Motion to Quash Subpoena. This document is not attached to the motion contained in our record.

To complain of excluded evidence, the party must make an offer of proof or an informal bill of exceptions to establish the substance of the evidence. TEX.R.APP. P. 52(b). However, in this situation the law does not require the offer of proof to show the *specific* facts the cross-examination would reveal. *Koehler v. State* 679 S.W.2d 6, 10 (Tex.Crim. App.1984).

The portions from the hearing in the trial court set out above shows appellant provided a detailed explanation of what he expected the evidence to show. Appellant was not required to proffer that he would expect Officer Mock to testify his arrest of appellant was marginal and motived only by his interest in receiving overtime pay. Instead, appellant was only required to show that such an inference could be raised from the testimony regarding his overtime income. Appellant preserved this point for review.

 Turning now to the merits of this point of error, we note our concern over the exclusion of potential impeachment evidence because it touches upon the defendant's Confrontation Clause rights. *See generally Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); *Pointer v. Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). The accused should be allowed great latitude to show a witness's bias or motive to falsify his testimony. *Hodge v. State,* 631 S.W.2d 754, 758 (Tex.Crim.App. [Panel Op.] 1982). However, the extent of cross-examination to show bias rests on the sound discretion of the trial judge. *Chambers v. State,* 866 S.W.2d 9, 27 (Tex.Crim.App.1993), *cert. denied,* 511 U.S. 1100, 114 S.Ct. 1871, 128 L.Ed.2d 491 (1994); *McKee v. State,* 855 S.W.2d 89, 91 (Tex.App.—Houston [14th Dist.] 1993, no pet.).

The trial judge must balance the probative value of the evidence sought to be introduced against the risk its admission may entail. The potential risks include the possibility of undue prejudice, embarrassment or harassment to either a witness or a party, the possibility of misleading or confusing a jury, and the possibility of undue delay or waste of time.

*Hodge,* 631 S.W.2d at 758.

 We agree with appellant that the evidence concerning Officer Mock's financial interest, including his aggregate overtime pay, was relevant evidence. Relevant evidence refers to evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would without the evidence. TEX.R. CIV. EVID. 401. The evidence need not prove or disprove a particular fact; the evidence is sufficiently relevant if it provides "a small nudge" towards proving or disproving any fact of consequence. *Montgomery v. State,* 810 S.W.2d 372, 376 (Tex.Crim.App.1990); *Henderson v. State,* 906 S.W.2d 589, 594 (Tex.App.—El Paso 1995, pet. ref'd). Furthermore, "[t]he motives which operate upon the mind of a witness when he testifies are never regarded as immaterial or collateral matters." *Hooper v. State,* 494 S.W.2d 846, 848 n. 1 (Tex.Crim.App.1973).

This case is similar to another case decided by this Court. *McKee v. State,* 855 S.W.2d 89 (Tex.App.—Houston [14th Dist.] 1993, no pet.). In *McKee,* the trial court did not allow the appellant to cross-examine the arresting officer concerning his overtime pay. *Id.* at 90. The appellant claimed evidence of overtime pay would show bias on the part of the officer. *Id.* at 90–91. We disagreed. We discussed the trial court's considerable discretion in determining when and how bias may be proven. *Id.* at 91. We noted the appellant did not establish that the officer made more money if a conviction was obtained or if his testimony favored the defense's case. *Id.* Finally, we concluded that the trial court did not abuse its discretion in excluding the evidence. *Id.*

In *McKee,* appellant contended the officer would alter his testimony on the stand because he was paid overtime as a State witness. *See id.* at 91. In this case, appellant suggests Officer Mock would make marginal arrests knowing he would collect more overtime pay for each additional arrest he made.

Our research has not uncovered a Texas decision addressing the admission of evidence of an officer's financial interest to make "marginal" arrests. Thus, we turn for guidance to a decision by the District of

Columbia Court of Appeals. *Barnes v. United States,* 614 A.2d 902 (D.C.App.1992). In *Barnes,* the officer was asked, "[A]re you on overtime now?" *Id.* at 903. In response to the government's objection, the *Barnes* appellant argued the officer was motivated to make arrests in "marginal" drug sale cases so the officer would appear in court more frequently and thereby earn more overtime pay. *Id.* The trial court sustained the objection. *Id.* The appellate court found two major flaws with the appellant's argument. First, the argument makes a large assumption that the officer would risk his or her career, in addition to potential civil and criminal penalties, by falsely arresting innocent persons to earn additional overtime pay. *Id.* at 904. The second flaw relates to the officer's inability to ensure the case would actually go to trial.

> [T]he flaw the trial judge perceived in appellant's theory was that between the putative motive to arrest innocent or "marginal" defendants to earn extra courtroom pay and its ultimate realization lay numerous steps in the criminal justice process over which the officer had little or no control, and which in the aggregate made the imputed motive imaginary. Assuming, for example, that the officer could predict how prosecutors would exercise their charging and plea discretion in individual cases, there remained the grand jury as an obstacle before a putatively corrupt officer could have any confidence that innocently arrested defendants would be forced to stand trial. Without detailed explanation of how these factors operate in the process, a jury could not intelligently begin to evaluate the theory of bias. And even then, as the trial judge concluded, the result of the inquiry would be "so speculative and so interdependent upon other information that otherwise would have no place in the trial" that jury confusion would outweigh any possible utility on the issue of bias.

*Id.* (footnotes omitted).

■ We find the analysis and outcome in *Barnes* to be persuasive. Like *Barnes,* whether a case is ultimately tried involves many decisions over which the officer has little input or control. Thus, his decision to make allegedly "marginal" arrests is too attenuated from any potential financial gain to overcome the risk of confusion of the issues, embarrassment, harassment, and undue delay. In addition, this is not a situation where the jury was presented with no evidence of Officer Mock's financial interest. The jury was aware that Officer Mock had a financial interest in the proceedings because he received overtime pay while presenting his testimony and that he had made over 100 similar arrests. The jury had sufficient evidence in front of them to conclude, if it had wished to, that Officer Mock's testimony concerning appellant's arrest was not reliable because of his financial interest. Allowing additional questions about the aggregate amount of overtime earned would only be "peripherally relevant" to show his bias, if any. *See United States v. Tansley,* 986 F.2d 880, 886 (5th Cir.1993).

On the other hand, allowing appellant to question Officer Mock about his aggregate overtime pay could create other problems. This line of questioning might require the admission of other testimony concerning the number of arrests he made, how many trials he testified in, how many of those arrests were meritless, how many of the meritless arrests actually proceed to trial, how much of his overtime pay is attributable to his testifying in the meritless cases, etc. These additional questions risk confusing the issue of whether or not Officer Mock had a bias in *this* case. It could also lengthen the trial significantly, creating the possibility of undue delay. The benefit of admitting evidence of the aggregate overtime earned in the previous year is easily outweighed by the confusion of issues and potential for unnecessary delay. *See Hodge,* 631 S.W.2d at 758. Therefore, the trial court did not abuse its discretion in excluding this evidence.

Appellant argues the decision in *Vela v. State,* 776 S.W.2d 721 (Tex.App.—Corpus Christi 1989, no pet), is factually similar to this case and therefore, *Vela* should control. In *Vela,* vice squad officers arrested a topless dancer for soliciting drinks. *Id.* at 723. The trial court prevented the defendant from questioning whether the officers spent a

"considerable amount" of money at the club, compelling the officers "to make meritless arrests in order to justify the money spent and appease his superiors." *Id.* at 725. The Corpus Christi Court of Appeals held that the exclusion of this evidence was an abuse of discretion. *Id.*

*Vela* is distinguishable from the instant case. *Vela* did not address whether or not the trial court balanced the probative value of the evidence against undue prejudice, embarrassment, harassment, confusion of the issues, and undue delay. *Chambers,* 866 S.W.2d at 27; *Hodge,* 631 S.W.2d at 758. Furthermore, the *Vela* jury was not privy to *any* of the relevant evidence regarding the officers' bias. Here, the jury knew Officer Mock had a financial interest in testifying, and the jury could draw its own conclusions from the evidence presented. Because the trial court did not abuse its discretion, we overrule the first point of error.

### III. Expert Testimony

In his second, third, fourth, fifth, and sixth points of error, appellant complains the trial court excluded relevant expert testimony. Specifically, the second and third points of error assert that witness Bob Bauer should have been allowed to estimate for the jury a person's blood-alcohol content if the person drank one beer an hour and to testify concerning the scientific theory supporting the Intoxilyzer 5000. The fourth, fifth, and sixth points of error assert the trial court erred in refusing to admit testimony from Gary Trichter concerning the scientific theory, reliability, and malfunctions of the Intoxilyzer 5000.

▆ Appellant has failed to preserve these points for review. When the trial court excludes evidence and a party wishes to complain about its exclusion, the record must indicate what the evidence would have been; otherwise, nothing is presented for review. *Easterling v. State,* 710 S.W.2d 569, 575 (Tex. Crim.App.1986), *cert. denied,* 479 U.S. 848, 107 S.Ct. 170, 93 L.Ed.2d 108 (1986); *Jefferson v. State,* 900 S.W.2d 97, 100–101 (Tex. App.—Houston [14th Dist.] 1995, no pet.); Tex.R.App. P. 52(b). The record does not reflect what the answers to these questions

would have been. Appellant did not preserve these points for review. We overrule points of error two, three, four, five, and six.

### IV. Improper Jury Argument

In his seventh through tenth points of error, appellant complains of improper jury argument. Points of error seven and eight allege the trial court erred in overruling appellant's objection to the State's argument that one of the testifying officers was "reliable and credible" and "so honest." Points of error nine and ten allege the State improperly misstated the law by shifting the burden of proof when it urged the jurors not to "reward appellant for not doing anything" and not to send a message that "it's okay to refuse to do everything."

The State made the following argument to the jury regarding the reliability and credibility of the testifying officers:

> [The State]: The prosecution didn't bring you people to tell you that Officer Mock and Officer Juenke were credible and reliable because that is your job. We didn't need somebody to tell you that they were credible and reliable. They told you through their own testimony they were *credible and reliable.*
>
> Officer Juenke *was so honest* to the point that he said—
>
> [Defense counsel]: Object to counsel interjecting her own belief.
>
> [The court]: Overruled
>
> [The State]:—to the point that he said, I can't render an expert opinion. If he wanted to embellish, he could have said in my expert opinion he was intoxicated, but he didn't say that. He said, I can give you a lay opinion. He said, I've interacted with him before but when I said, is his speech the same or different, he was honest, he told you, I can't answer that. *He was credible and reliable.*

(emphasis added). The trial court overruled appellant's objection that the State was attempting to provide its own opinion of who is reliable and credible.

Later, the State told the jury not to "reward Mr. Castillo for not doing anything."

The trial court sustained appellant's objection on the grounds the State was shifting the burden of proof and instructed the jury to disregard the comment. The trial court denied appellant's request for a mistrial. The State then made the following argument:

> You know we read the newspapers and we see the T.V. and we say, when are they going to do something about this. Well, this is your chance. This is your chance to be the they in the newspapers that's going to do something about it to send a message to Mr. Castillo, a message to the citizens of Harris County, we are not going to tolerate driving while intoxicated. We are not going to wait for you to be falling down drunk and we are not going to send a message that it's okay *to refuse to do everything* because then juries aren't going to be able to convict you.

(emphasis added). The trial court overruled appellant's objection that the State was shifting the burden of proof.

 Proper jury argument is limited to a summation of the evidence, reasonable deductions from the evidence, an answer to argument by opposing counsel, or a plea for law enforcement. *Smith v. State,* 898 S.W.2d 838, 845 (Tex.Crim.App.), *cert. denied,* —— U.S. ——, 116 S.Ct. 131, 133 L.Ed.2d 80 (1995). A statement made during jury argument must be analyzed in light of the entire argument, and not only isolated sentences. *Williams v. State,* 826 S.W.2d 783, 785–86 (Tex.App.—Houston [14th Dist.] 1992, pet. ref'd). An improper jury argument constitutes reversible error only if, "in light of the record as a whole, the argument is extreme or manifestly improper, violative of a mandatory statute or injects new facts, harmful to the accused, into the trial." *Felder v. State,* 848 S.W.2d 85, 95 (Tex.Crim.App.1992), *cert. denied,* 510 U.S. 829, 114 S.Ct. 95, 126 L.Ed.2d 62 (1993).

 With regard to the statement that the officers were "reliable and credible" and "so honest," the record suggests the State was simply making a reasonable inference from the record. Wide latitude is allowed without limitation in drawing inferences from the evidence, so long as the inferences drawn are reasonable, fair, legiti-

mate, and offered in good faith. *Gaddis v. State,* 753 S.W.2d 396, 398 (Tex.Crim.App. 1988). The State specifically told the jury their job was to determine the reliability and credibility of the witnesses. The State then attempted to show the jury why the testimony was credible by pointing to specific statements made by Officer Juenke on the stand and comparing it to statements that could have been made to help the case if he were not honest. These statements do not reach the extremes that have constituted reversible error in the past. *See, e.g., Menefee v. State,* 614 S.W.2d 167, 168 (Tex. Crim.App.1981) ("I don't believe I have ever seen anybody that I thought was any more honest than she is"); *Brown v. State,* 165 Tex.Crim. 535, 309 S.W.2d 452, 453 (1958) ("These officers are the most ... truthful men in the enforcement of the law"). This case is more analogous to those cases where error has not been found. *See, e.g., Vasek v. State,* 163 Tex.Crim. 632, 294 S.W.2d 810, 811 (1956) (counsel drew impression that the officer was honest from the answers of witnesses); *Smith v. State,* 842 S.W.2d 401, 406 (Tex.App.—Fort Worth 1992, pet. ref'd) ("[R.F.] has told the truth from the very beginning and it is the truth," and "It's truthful, it's believable"). In light of the entire argument, these statements were reasonable deductions from the evidence. We overrule appellant's seventh and eighth points of error.

 We now address points of error nine and ten concerning the statements that the jurors should not "reward Mr. Castillo for not doing anything" and should not send a message that it is "okay to refuse to do everything." Relying in part on *Whiting v. State,* 797 S.W.2d 45 (Tex.Crim.App.1990), appellant maintains that these remarks misstated the law and shifted the burden of proof. A review of the entire argument shows the State was not attempting to shift the burden of proof, but was making a valid plea for law enforcement. The prosecutor explained to the jury that appellant does not have the burden to prove his sobriety. The prosecutor emphasized the evidence that was introduced by the State and, in essence, asked the jury to convict based on the evi-

dence admitted, rather than focusing on evidence the State was not able to introduce due to appellant's refusal to submit to any tests to determine his level of intoxication. Thus, this case is distinguishable from *Whiting.* In *Whiting,* the prosecutor repeatedly told the jury that the State did not have the burden of disproving self-defense in a resisting arrest case. *Id.* at 46–48. The court found that the misstatement of law directly impacted the jury's perception of the burden to which the State was to be held before a verdict of guilt could be returned. *Id.* at 48. Here, the prosecutor's argument did not misstate the law.

■ Further, the State's argument was permissible as an answer to the argument of opposing counsel. Appellant requested that the jury *not punish* him for refusing the tests because they are unreliable. Thus, it was proper for the State to suggest the jury should *not reward him* for refusing all the tests.

■ Finally, as to the statement "Don't reward Mr. Castillo for not doing anything," the trial court sustained the objection and instructed the jury to disregard that remark. An instruction to disregard the argument generally cures any error. *Dinkins v. State,* 894 S.W.2d 330, 357 (Tex.Crim.App.), *cert. denied,* —— U.S. ——, 116 S.Ct. 106, 133 L.Ed.2d 59 (1995). Appellant's ninth and tenth points of error are overruled.

### V. Double Jeopardy

In his final point of error, appellant claims the trial court erred in overruling his special plea of double jeopardy. Prior to trial, appellant filed a Special Plea of Double Jeopardy contending he had already been "punished" once for the conduct forming the basis of the prosecution in this case. Appellant alleged he was tried in a civil proceeding where the municipal judge ordered suspension of his driver's license, probated for a period of twelve months. The trial court denied the special plea.

The Double Jeopardy Clause protects against 1) a second prosecution for the same offense after acquittal; 2) a second prosecution for the same offense after conviction;

and 3) multiple punishments for the same offense. *United States v. Halper,* 490 U.S. 435, 440, 109 S.Ct. 1892, 1897, 104 L.Ed.2d 487 (1989). The Court of Criminal Appeals recently held the administrative suspension of a driver's license under Tex.Rev.Civ. Stat. Ann. art. 6687b–1 (current version located in Tex. Transp. Code Ann.) does not constitute punishment under the Double Jeopardy Clause. *Ex Parte Tharp v. State,* 935 S.W.2d 157 (Tex.Crim.App.1996). We overrule appellant's eleventh point of error.