COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  |  |  |
|---|---|---|
| JOSE LUIS JIMENEZ, | § | No. 08-08-00347-CR |
| Appellant, | § | Appeal from |
| v. | § | 210th District Court |
| THE STATE OF TEXAS, | § | of El Paso County, Texas |
| Appellee. | § | (TC # 20080D02726) |
|  | § |  |

**O P I N I O N**

Jose Luis Jimenez appeals his conviction of felony driving while intoxicated.  A jury found Appellant guilty and assessed his punishment at imprisonment for a term of sixteen years.  For the reasons that follow, we affirm.

**FACTUAL SUMMARY**

On the evening of May 18, 2008, El Paso police officer Sgt. Lawrence Lujan pulled into the parking lot of a convenience store.  There he observed Appellant run through a stop sign and stop abruptly in the middle of the intersection.  Lujan pulled his patrol car behind the vehicle and instructed Appellant to drive into the parking lot.  After Appellant complied, Lujan approached the driver's door with the intention of making routine inquiries associated with a traffic stop.  Appellant tried to exit the vehicle but Lujan instructed him to stay inside and asked for his driver's license and insurance.  Lujan immediately observed that Appellant was disoriented and did not have "all his faculties."  Appellant had difficulty retrieving his driver's license and insurance card but he gave them to Lujan along with other paperwork.  Lujan asked Appellant whether he had any alcohol to drink that day and Appellant mumbled but did not otherwise respond to the question.  Based on his

observations, Lujan believed Appellant was "under the influence of alcohol." Because Lujan is not certified to administer the standardized field sobriety tests, he requested the assistance of another unit to administer them. Officers Gabriel Castaneda and Orlando Diaz arrived with a couple of minutes and Lujan briefed them on what had happened thus far and advised them that Appellant appeared to be intoxicated. Diaz and Castaneda then approached Appellant's vehicle.

Officer Castaneda, who was at the passenger door, observed that Diaz appeared to know Appellant. Diaz testified he had and Appellant had grown up together and he considered Appellant a friend although they no longer socialized. Diaz asked Appellant how he was doing and Appellant began saying that he was sorry and asked Diaz to let him go because he would not do it again. Appellant repeated these statements throughout the officers' encounter with him. Diaz told Appellant he could not let him go. Diaz observed that Appellant had bloodshot eyes, slurred speech, and Diaz smelled alcohol on Appellant's person. Diaz then turned the case over to Castaneda and the officers asked Appellant to step out of the vehicle. Castaneda took Appellant by the arm because it appeared he was going to fall. Appellant refused to perform the field sobriety tests while continuing to ask the officers to let him go and promising not to do it again. Based on his observations that Appellant had poor balance, watery eyes, slurred speech, and the smell of alcohol on his person, Castaneda formed an opinion that Appellant was intoxicated and he placed him under arrest for driving while intoxicated. At the police station, Appellant refused to provide a sample of his breath for analysis.

A grand jury indicted Appellant for felony driving while intoxicated, enhanced by a prior felony DWI conviction. The case went to trial and a jury found Appellant guilty as charged in the indictment. At the punishment phase, Appellant pled true to the enhancement allegation. The jury found Appellant guilty and assessed his punishment at imprisonment for a term of sixteen years.

**SHIFTING THE BURDEN OF PROOF**

In his first issue, Appellant argues that the trial court erred by overruling his objections to the prosecutor's final argument because it shifted the burden of proof to Appellant to produce evidence. The State responds that the issue is waived because Appellant failed to specifically object.

The following occurred during final argument:

[Prosecutor]: So let's get back to the intoxication. You know, I don't think I've ever heard a defendant complain as much about what the evidence could have shown, or what we might have, or what's this evidence we're missing this evidence, or make a cry for more evidence who's done so much to keep evidence from you. I mean, didn't even attempt to --

[Defense counsel]: Your Honor, may we approach the bench?

[The Court]: No, no. Go ahead. Go ahead.

[Prosecutor]: Didn't even attempt to do the standard field sobriety tests. Requested given -- I'm sorry was there a bench conference?

[The Court]: Well, I don't know.

[Defense counsel]: Your Honor, there's an objection, Your Honor. I think what he's doing is trying to shift the burden that we're supposed to come forward with evidence and that's his argument.

[Prosecutor]: We're talking about the occurrence, not this trial, Judge.

[The Court]: Okay, well, I'll -- I'll overrule at this time.

[Prosecutor]: Thank you. So he's out there at the scene and *there could have been more evidence in this case, but who's in control of that evidence? If he's genuinely interested in providing to anyone evidence of his sobriety he could do the standardized field sobriety test. He could do the walk and turn, he could do the horizontal gaze nystagmus, he could do the one-leg stand.*

Of course this isn't his first rodeo. Don't be fooled by, Well, did you explain to him what the test would consist of, or what the results might be. This isn't his first rodeo. He knows exactly what the standardized field sobriety tests are. *He knows what the breathalyzer is.*

*And who's in control of getting that information to you? There's the evidence that*

*you could have had but you don't have. He refused to blow.* Why did he refuse to blow? That's why we call it blow, give a breath sample. Because he knows he's intoxicated.

After the State concluded its argument, the trial court asked the attorneys to approach the bench and Appellant reurged his objection that the State had attempted to shift the burden with its argument. The trial court sustained the objection and instructed the jury that the State had the burden of proof and Appellant did not have any burden to prove his innocence. The court denied Appellant's motion for a mistrial.

Issue One is directed at the italicized portions of the argument set forth above. As noted by the State, Appellant did not make contemporaneous objections to these parts of the prosecutor's final argument. Rule 33.1 requires a party to preserve a complaint for appellate review by making a timely and specific objection. TEX.R.APP.P. 33.1. To preserve error regarding improper jury argument, a defendant ordinarily should (1) contemporaneously object to the statement; (2) request an instruction that the jury disregard the statement if the objection is sustained; and (3) move for a mistrial if the instruction is granted. *Cooks v. State*, 844 S.W.2d 697, 727-28 (Tex.Crim.App. 1992). Further, a defendant must object each time the impermissible argument is made, or the complaint is waived. *Wilson v. State*, 179 S.W.3d 240, 249 (Tex.App.--Texarkana 2005, no pet.); *Dickerson v. State*, 866 S.W.2d 696, 699 (Tex.App.--Houston [1st Dist.] 1993, pet. ref'd); *see Ethington v. State*, 819 S.W.2d 854, 858 (Tex.Crim.App. 1991)(to preserve error in the admission of evidence, a party must continue to object each time the inadmissible evidence is offered). One exception to the requirement of a contemporaneous objection is when the defendant obtains a "running" objection. *Ethington*, 819 S.W.2d at 858. Appellant did not request a running objection to the argument. Because Appellant failed to object to the specific portions of the argument he complains of on appeal, we find that he failed to make a contemporaneous objection to each instance of

allegedly improper final argument. The trial court's *sua sponte* reconsideration of the only objection made by Appellant did not satisfy the requirement for a contemporaneous objection to the other instances of allegedly improper argument.

Even assuming that the complaint is preserved for appellate review, and further assuming that the prosecutor's argument was improper, we find that the instruction given by the trial court would have cured any prejudice. *See Castillo v. State*, 939 S.W.2d 754, 762 (Tex.App.--Houston [14th Dist.] 1997, pet. ref'd)(concluding trial court's instruction to disregard cured any error resulting from State's argument shifting burden of proof to defendant). Therefore, the trial court did not abuse its discretion by denying Appellant's motion for a mistrial. *See Hawkins v. State*, 135 S.W.3d 72, 85 (Tex.Crim.App. 2004). Issue One is overruled.

## ARGUMENT REFERRING TO DEADLY CONDUCT

In Issue Two, Appellant argues that the State made an improper final argument by referring to the manner in which Appellant operated his vehicle as "deadly conduct" and by stating that Appellant could have killed someone. Appellant asserts that the argument is speculative and outside of the record.

The prosecutor made the following argument:

[Prosecutor]: He blew right through the crosswalk and into the intersection; he could have killed somebody. And has somebody been killed by this type of behavior in this community? Think about it. Yes, they do. This is deadly, deadly conduct. And when it happens once, twice, thrice, this is something we cannot tolerate. And we cannot tolerate this. We need to say we have to stop. He promises, I will never do this again. Well, he's had a chance not to do it again. Not once but twice and so on. He's here. And we have to do something about this.

Later, the prosecutor argued:

But the people of this community also have rights. We should feel we have the right to get out there and drive around this community without having fear that some guy who -- it's not his first DWI or his second. Here he is, you know, running a stop sign

-- and killing us or our loved ones or someone. It doesn't matter who. A child, an old person, a young person. There's only one group in this courtroom that could put a stop to it as far as this guy's concerned, and that's you.

Appellant did not raise any objection to this argument. It is well established that a defendant must object to improper final argument in order to preserve error. *See Cockrell v. State*, 933 S.W.2d 73, 89 (Tex.Crim.App. 1996). Citing several cases which pre-date *Cockrell*, including *Miller v. State*, 741 S.W.2d 382 (Tex.Crim.App. 1987) and *Romo v. State*, 631 S.W.2d 504 (Tex.Crim.App. 1982), Appellant relies on an exception to the requirement of a contemporaneous objection. *Cockrell* abolished this exception. Having failed to object to the argument, Appellant did not preserve this issue for our review. Accordingly, we overrule Issue Two.

## ADMISSION OF ORAL STATEMENTS

In Issue Three, Appellant contends that the trial court erred by failing to suppress his oral statements because he was not given his *Miranda*[1] warnings prior to making the statements. The State replies that Appellant's oral statements were not the product of custodial interrogation, and therefore, the trial court did not abuse its discretion by denying the motion to suppress.

*Standard of Review*

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex.Crim.App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App. 1997). We give almost total deference to a trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor, but we review *de novo* application-of-law-to-fact questions that do not turn on credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex.Crim.App. 2005).

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

When the trial court has not made a finding on a relevant fact, we view the evidence in the light most favorable to the trial court's ruling and assume the trial court made implicit findings of fact supported by the record. *Herrera v. State*, 241 S.W.3d 520, 527 (Tex.Crim.App. 2007). We will uphold the trial court's ruling if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *State v. Dixon*, 206 S.W.3d 587, 590 (Tex.Crim.App. 2006).

*Custodial Interrogation*

Appellant sought to suppress testimony by Officers Castaneda and Diaz that Appellant repeatedly stated during their encounter with him that he was sorry, he would not do this again, and to please let him go. The State argues that Appellant's statements were not made in response to interrogation by the officers, and therefore, the officers' failure to *Mirandize* Appellant did not require suppression of the statements.

Article 38.22 and *Miranda* do not apply unless the accused's statement is the result of custodial interrogation. TEX.CODE CRIM.PROC.ANN. art. 38.22, § 5 (Vernon 2005); *Dowthitt v. State*, 931 S.W.2d 244, 263 (Tex.Crim.App. 1996). Custodial interrogation occurs when a person in custody is subjected to direct questioning or its functional equivalent, which occurs when police officers engage in conduct that they know is likely to elicit an incriminating response. *Rhode Island v. Innis*, 446 U.S. 291, 300-01, 100 S.Ct. 1682, 1689-90, 64 L.Ed.2d 297 (1980). This definition of "interrogation" focuses primarily upon the perceptions of the suspect, rather than the intent of the police. *Moran v. State*, 213 S.W.3d 917, 923 (Tex.Crim.App. 2007), *citing Innis*, 446 U.S. at 301, 100 S.Ct. 1682, 64 L.Ed.2d 297 (subjective intent of police officer to obtain incriminating statement not relevant to determining whether an interrogation has occurred). Off-hand remarks, not designed to elicit any kind of response, do not constitute interrogation. *Innis*, 446 U.S. at 303, 100 S.Ct. at 1691. Further, questioning normally attendant to arrest and custody is not interrogation. *Innis*, 446

U.S. at 300-02, 100 S.Ct. at 1689-90; *McCambridge v. State*, 712 S.W.2d 499, 505 (Tex.Crim.App. 1986).

The record reflects that Appellant first made the statements in response to Diaz asking Appellant how he was doing when he and Castaneda first approached the vehicle. When Diaz asked Appellant to exit his vehicle, Appellant repeatedly asked Diaz to let him go. Castaneda then asked Appellant to perform the standardized field sobriety tests, but Appellant refused. Appellant repeatedly asked the officers to let him go while promising that he would not do it again. Castaneda escorted Appellant to the patrol car, did a pat-down search, and asked him again to perform the standardized field sobriety tests. Appellant repeated the same request to be let go and promise not to do it again. At that point, Castaneda informed Appellant he was under arrest for DWI and he placed him in handcuffs. The trial court found, based on its review of the video recording at the scene, that Appellant was not in custody until Officer Castaneda handcuffed Appellant and informed him he was under arrest for DWI. Further, the court ruled that Appellant's post-arrest statements were not admissible.

Appellant argues, as he did in the trial court, that he was in custody from the moment the officers asked him to exit the vehicle. We need not determine this issue because we find that none of the challenged statements were made in response to interrogation or its functional equivalent. Diaz's initial greeting "how are you doing" is not interrogation. Likewise, the officers' request that Appellant perform the standardized field sobriety tests is not interrogation or its functional equivalent. *See Jones v. State*, 795 S.W.2d 171, 176 (Tex.Crim.App. 1990)(holding that a request to perform field sobriety tests and directions on how suspect is to do tests do not constitute "interrogation"). Given the absence of evidence establishing that the challenged statements were the product of custodial interrogation, the trial court did not err by refusing to suppress them. Issue

Three is overruled.

**STIPULATION**

In Issue Four, Appellant asserts that the trial court erred by failing to properly instruct the jury regarding his written stipulation to his two prior DWI convictions because it permitted the jury to utilize the evidence of his prior convictions as proof that he drove while intoxicated in the instant case. Appellant did not object to the charge on this ground.

When reviewing charge error, we first determine if an error actually exists in the charge. *Middleton v. State*, 125 S.W.3d 450, 453 (Tex.Crim.App. 2003); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App. 1984), *superseded on other grounds by rule as stated in Rodriguez v. State*, 758 S.W.2d 787 (Tex.Crim.App. 1988). If there is charge error, we must then determine if the error caused sufficient harm to warrant reversal. *Hutch v. State*, 922 S.W.2d 166, 170-71 (Tex.Crim.App. 1996); *Almanza*, 686 S.W.2d at 171. Preservation of charge error does not become an issue until we assess harm. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex.Crim.App. 2005). The degree of harm necessary for reversal depends on whether the defendant preserved the error by objection. *Id*. When the defendant fails to object, as in this case, we will not reverse for jury charge error unless the record shows "egregious harm" to the defendant. *Id.* at 743-44; *Almanza*, 686 S.W.2d at 171.

Under the *Almanza* egregious harm standard, the record must show that a defendant has suffered actual, rather than merely theoretical, harm from the jury instruction error. *Almanza*, 686 S.W.2d at 174. Egregious harm consists of errors affecting the very basis of the case or that deprive the defendant of a valuable right, vitally affect a defensive theory, or make the case for conviction or punishment clearly and significantly more persuasive. *Saunders v. State*, 817 S.W.2d 688, 692 (Tex.Crim.App. 1991). Egregious harm is a difficult standard to prove and must be determined on a case-by-case basis. *Ellison v. State*, 86 S.W.3d 226, 227 (Tex.Crim.App. 2002). To determine

whether a defendant has sustained egregious harm from an instruction to which he did not object, we consider (1) the entire charge; (2) the state of the evidence, including contested issues; (3) arguments of counsel; and (4) any other relevant information revealed by the record of the trial as a whole. *Allen v. State*, 253 S.W.3d 260, 264 (Tex.Crim.App. 2008); *Hutch*, 922 S.W.2d at 171.

A jury charge must distinctly set forth the law applicable to the case and set out all of the essential elements of the offense. *Martin v. State*, 200 S.W.3d 635, 639 (Tex.Crim.App. 2006). This requirement includes jurisdictional elements. *Id.* Thus, the jury charge must inform the jury of the existence of the two prior DWI convictions that the defendant has stipulated to and that the State relies upon for conviction of a felony DWI offense. *Id.* In *Martin*, the Court of Criminal Appeals explained that a trial court can instruct the jury about the stipulated prior convictions in any of several different ways. *Id.* One way is to include the specific indictment allegations of the two prior DWI convictions in the application paragraph with a separate paragraph stating that the defendant has stipulated to the existence of those two prior convictions, thereby establishing the jurisdictional element. *Id.* This separate paragraph would also instruct the jury to find that the jurisdictional prior convictions may not be used for any other purpose in determining the guilt of the defendant on the charged occasion. *Id.* Another way is to simply charge the elements of the underlying DWI offense and include a paragraph stating that the defendant has stipulated to the existence of two (specified or unspecified) prior DWI convictions, and thus the jury is directed to find that those elements of felony DWI are established. *Id.* The court acknowledged that the parties and trial judge may devise other, entirely satisfactory, instructions to inform the jury of the existence of the defendant's stipulation and of its effect. *Id.* Further, the trial judge is authorized to give other limiting instructions appropriate to the case. *Id.*

Here, Appellant and the State entered into a written stipulation regarding Appellant's prior

DWI convictions. The jury was informed of the existence of the stipulation during voir dire and the stipulation was admitted into evidence at the beginning of the State's case-in-chief. Appellant did not object to the charge or otherwise bring to the trial court's attention that the charge failed to instruct the jury regarding the legal effect of the stipulation. The application paragraph of the charge required the jury to determine whether Appellant had previously been convicted of the two prior DWI offenses alleged in the indictment, but it did not specifically address the stipulation. However, the charge instructed the jurors that they could not consider the evidence admitted regarding the prior DWI convictions as proving or tending to prove that Appellant was driving while intoxicated in the instant case.

The charge is erroneous because it failed to reference the stipulation or instruct the jury regarding its legal effect. *See Martin*, 200 S.W.3d at 641. In support of his argument that egregious harm exists in this case, Appellant points to the prosecutor's statement during final argument that Appellant refused to take the breathalyzer test or perform the field sobriety tests because "This isn't his first rodeo." The prosecutor made the comment in apparent response to the defensive theory that Appellant did not perform the field sobriety tests because the officers did not explain what tests they were going to have Appellant perform or what would be expected of him. It is permissible for the State to argue that a defendant's refusal to take the breathalyzer is evidence of guilt. *See Bartlett v. State*, 270 S.W.3d 147, 153 (Tex.Crim.App. 2008) (concluding that evidence of refusal to submit to breath test is relevant in DWI case as it "tends to show consciousness of guilt"); *see also* TEX.TRANSP. CODE ANN. § 724.061 (Vernon 1999) (providing that refusal of request to submit to breath or blood test is admissible at trial). To the extent the prosecutor's argument could be construed as suggesting that the jury consider Appellant's prior convictions as evidence of his guilt in this case, it was counterbalanced by the trial court's instruction in the charge that the jury could

not consider the prior convictions as evidence that Appellant was driving while intoxicated in the instant case. Generally, we presume that the jury followed the trial court's instructions. *See Moore v. State*, 882 S.W.2d 844, 847 (Tex.Crim.App. 1994). Further, the prosecutor mentioned the stipulation during final argument and urged the jury to not convict Appellant simply because he had prior DWI convictions because to do so would be "improper" and "immoral." The prosecutor stated that the evidence of the prior convictions was introduced solely to establish jurisdiction and the stipulation made the prior convictions a non-issue. Under these facts, we find that the absence of an instruction on the legal effect of the stipulation did not result in egregious harm to Appellant. Issue Four is overruled.

## FINAL ARGUMENT

In Issue Five, Appellant contends that the prosecutor made an improper final argument by creating a false impression that Appellant's counsel had hidden evidence from the jury.[2] He argues that the prosecutor's argument informed the jury that the DVD had been redacted.

Permissible jury argument generally falls into one of four areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) an answer to the argument of opposing counsel; or (4) a plea for law enforcement. *Berry v. State*, 233 S.W.3d 847, 859 (Tex.Crim.App. 2007); *Underwood v. State*, 176 S.W.3d 635, 639 (Tex.App.--El Paso 2005, pet. ref'd). When determining if the prosecutor made an improper jury argument, we consider the remark in its context. *Gaddis v. State*, 753 S.W.2d 396, 396 (Tex.Crim.App. 1988); *Rodriguez v. State*, 90 S.W.3d 340, 364 (Tex.App.--El Paso 2001, pet. ref'd).

During the suppression hearing, the parties and the court discussed remarks by Officer Diaz

---

[2] Appellant frames his issue as trial court error in denying his motion for mistrial but the record reflects that the trial court overruled Appellant's objection.

on the original VHS recording that he knew Appellant and he had just gotten out of prison for a

DWI. These remarks were redacted from the original recording and the redacted version was copied

onto a DVD. At trial, the court admitted the redacted DVD into evidence and it admitted the original

VHS record  for purposes of the appellate record. Defense counsel, however, utilized the original

VHS recording with the sound turned off for purposes of cross-examination.  During closing

argument, defense counsel made a lengthy argument criticizing the police officers for failing to place

Appellant in front of the camera during the roadside encounter.  Referring to the video, defense

counsel argued:

> And you can look at it.  Take it with you.  And see if he's using the vehicle to stand up or if he's just there with these three individuals around him.  And they said that he stumbled out of the vehicle.  You look at it, see if he stumbles out.  Because they have to prove that he lost his normal faculties, physical faculties.  And that's what they want to use for you -- to make you believe that.

> But you know what the biggest thing about it, ladies and gentlemen, is?  And that's why I harped on it.  Because it's their responsibility to bring you the best evidence.  It's their responsibility, not ours.  He didn't have the responsibility of saying, You know what, guys, take me in front of the vehicle.  That way if you think I have slurred speech, I'll talk in [sic] and you can hear my slurred speech.  Take me in front of the camera and I'll show you my glassy eyes.  Or red bloodshot eyes.  That's the best evidence.  And that's their responsibility to bring it to you.

> Now, what did Officer Castaneda say?  Because he'd just been through the academy, he says, Yes, we're trained that the best thing to do is you get somebody down, you take him in front of the vehicle and you question him there.

> Why do you do that?  Because you preserve the evidence.  You don't keep him on the side of a vehicle where you can't see.  You [sic] can't bring you evidence that an individual has red, bloodshot eyes, that he has slurred speech, that he's stumbling when he's behind the vehicle or out of view.  The best evidence -- and they know it.  All three of them have been trained.  But you, ladies and gentlemen, are the judges of the credibility of those police officers, because Officer Castaneda testified that he was under the supervision of Officer Diaz.

Moments later, defense counsel argued:

But that picture[3] does not show he's intoxicated. Remember it's their burden. And they have to prove each and every element. They have to prove that he lost the use of his physical faculties first. And because they say he stumbled or maybe fell one time -- and you know what, ladies and gentlemen, if you're going to be judged because you stumble one time and they're going to accuse you of being intoxicated, that's wrong. That burden is wrong.

What else do they have to show? That he lost -- he walked away, went to the back and we couldn't see what else he did back here. We don't know how he walked. We don't know if he was jumping around or moving around. We don't know because we don't see it on video, and it's not our responsibility, it's theirs. They could have turned on the video. They knew. Why didn't you turn on the video? Oh, we didn't feel it was necessary.

Ladies and gentlemen, it's not necessary to you? Sure is necessary to me if I want to know. And if I'm a juror I want to know these things. And I want to know how an individual acts in front of a camera because that's the best evidence, not just what I'm going to say or somebody else is going to say. And they had it right there in their hands. They had that ability to bring that to you, and they didn't.

The prosecutor responded with the following argument:

Now, you saw the defendant. You saw him on the video. One interesting thing, the defense attorney talks about how we're hiding the evidence. We're hiding the evidence. But when he went back to review the DVD to find the inconsistencies he didn't play you the audio, did he? That's not necessary. Why is that? Because when you listen to the audio, you can hear the defendant --

Defense counsel objected to the argument on the grounds that the State was arguing outside of the evidence and was referring to matters which had been excluded from evidence. Outside of the jury's hearing, the trial judge reminded defense counsel that he could have used the redacted DVD with audio for his cross-examination but he had chosen to instead use the original VHS videotape with all of audio silenced. The court then overruled the objection. The prosecutor proceeded to argue as follows:

He didn't want you to hear what his client was saying. Paraphrasing, Please, please let me go. Let me go. I won't do it again.

---

[3] Defense counsel was referring to the booking photograph admitted into evidence.

Appellant first argues that the prosecutor's argument is improper because defense counsel did not accuse the State of hiding evidence. The argument set forth above demonstrates that defense counsel stated that it was the police officers' job to make Appellant look as bad as possible and they did this by intentionally not putting him in front of the camera where he could have demonstrated that he was not intoxicated. Although defense counsel did not use the words "hiding evidence," it certainly could be inferred from his argument that the State had hidden evidence from the jury. We find that the prosecutor's argument was proper because it answered the argument of defense counsel. *See Goldberg v. State*, 95 S.W.3d 345, 388 (Tex.App.--Houston [1st Dist.] 2002, pet. ref'd)(holding that prosecutor's comment during closing argument, that they "did not want defendant's story coming in without him telling the story," was not improper comment on defendant's refusal to testify, but was in response to defendant's argument that State was hiding evidence favorable to defendant by objecting to admission of defendant's statements to police).

We also understand Appellant to argue that the argument was outside of the record because it informed the jury that the DVD had been redacted. The prosecutor's argument that defense counsel turned off the audio during cross-examination because he did not want the jury to hear Appellant telling the officers he would not do it again and to let him go, was not outside of the record because the jury had already heard evidence that Appellant had repeatedly made these statements during his encounter with the police officers. As such, the argument was a proper summation of the evidence. Further, after reviewing the prosecutor's argument in context, we conclude that the prosecutor did not inform the jury that the DVD had been redacted nor did it invite the jury to speculate regarding what had been redacted. Issue Five is overruled.

### VIOLATION OF THE SUPPRESSION ORDER

In Issue Six, Appellant argues that the State violated the suppression order by introducing

into evidence statements Appellant made to Sgt. Lujan when he was placed under arrest. During trial, Lujan testified that the other officers took Appellant to the rear of the vehicle and after Appellant made his final refusal to not perform the field sobriety tests, he observed Diaz and Castaneda place Appellant under arrest. Lujan then testified, without objection, that when Appellant was at the rear of the vehicle, he overheard Appellant stating, "I'm sorry, I'm sorry. . . . I won't do this anymore." Appellant argues that admission of this evidence violated the trial court's order suppressing Appellant's post-arrest statements. As noted by the State, Appellant did not raise any objection to admission of this evidence.

To preserve an issue for appellate review, a timely and specific objection is required. *Layton v. State*, 280 S.W.3d 235, 239-40 (Tex.Crim.App. 2009); TEX.R.APP.P. 33.1(a); TEX.R.EVID. 103(a)(1). When a pretrial motion to suppress evidence is denied, a defendant is not required to subsequently object at trial to the same evidence in order to preserve error on appeal. *See* TEX.R.EVID. 103(a)(1). Rule 103(a)(1) does not excuse a party from objecting when evidence is admitted in alleged violation of a pretrial ruling. Because Appellant failed to object, he waived any error in the admission of this evidence. We overrule Issue Six and affirm the judgment of the trial court.

January 12, 2011

_____
GUADALUPE RIVERA, Justice

Before Chew, C.J., McClure, and Rivera, JJ.

(Do Not Publish)