

# NUMBER 13-10-00491-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

CONRADO VELA III,                                          Appellant,

v.

THE STATE OF TEXAS,                                          Appellee.

## On appeal from the 156th District Court
## of Bee County, Texas.

## MEMORANDUM OPINION

### Before Justices Garza, Vela, and Perkes
### Memorandum Opinion by Justice Perkes

Appellant, Conrado Vela III, appeals his conviction for one count of aggravated kidnapping, a first-degree felony, and one count of unauthorized use of a motor vehicle, a state-jail felony. *See* TEX. PENAL CODE ANN. §§ 20.04, 31.07 (West 2003). A jury found appellant guilty and sentenced him to fifty years of confinement in the Texas Department of Criminal Justice, Institutional Division, for aggravated kidnapping and two years of

confinement for unauthorized use of a motor vehicle. The sentences are to run concurrently.

By one issue, appellant argues the trial court abused its discretion by allowing the State to introduce testimony about extraneous offenses committed against two other victims.[1] The testimony was elicited during the State's redirect examination of its witness, Amanda Zamora. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On or about March 15, 2009, Kimberly Garcia, appellant's then-girlfriend (complainant), was visiting appellant from Abilene, Texas. Appellant and Garcia had known each other for about three weeks. During her trip, they went to a party together in Beeville, Texas. At the party, Garcia sat on a couch underneath a blanket because she was cold. Appellant told Garcia, "Let's go," and Garcia followed appellant outside to Garcia's truck. As they walked to the truck, appellant called Garcia a rude name and accused her of rubbing her leg on another man's leg, apparently while seated under the blanket. Garcia denied this allegation.

Garcia told appellant she was going to return home to Abilene, but appellant asked her for a ride to his mother's house. She agreed to let him drive her truck, but once inside, appellant started hitting her and cursing at her. Garcia testified appellant told her he would drive her to a remote place and kill her, and that afterwards he would have someone kill her children. Garcia knew appellant was a gang member and that he had a

---

[1] After filing appellant's brief and arguing this case at oral argument, appellant's court-appointed appellate counsel filed an unopposed motion to withdraw from representation of appellant and for appointment of new counsel. Counsel's motion was carried with this case. We hereby grant counsel's motion and note the trial court has appointed substitute appellate counsel.

gang tattoo.

Appellant broke Garcia's cell phone when she tried to call the police. Garcia testified that on her third attempt to escape from the truck, she jumped out of it while it was traveling at forty miles per hour. Appellant ripped Garcia's shirt as he pulled it to try to prevent her from escaping. Garcia was bloodied as a result. The shirt was admitted into evidence at trial. Garcia ran to the nearest house, and the occupants called 9-1-1. Garcia testified she suffered permanent injury.

On the day after the incident, Garcia recanted and asked police to drop any charges because appellant told her to do so. Later that weekend, she and appellant drove to Abilene where he stayed with her for ten days. Garcia subsequently wrote appellant a love letter.

## A. Direct and Cross Examination of Zamora

During the guilt-innocence phase of trial, the State called Amanda Zamora as a witness. Zamora was another former girlfriend. Zamora testified she dated appellant from June 2009 until October 2009. She terminated the relationship after appellant told her that he accused Garcia of rubbing someone's leg, that appellant hit Garcia inside the truck, and that appellant did not let her get out of the truck, thereby forcing Garcia to jump out of the truck to escape. Zamora testified appellant told her that he tried to run over Garcia after she exited the truck.

On cross-examination, Zamora testified appellant made the statement about Garcia around October 27, 2009, but that she did not report it to the police at that time and did not e-mail Garcia about the incident until May 2010. Defense counsel confirmed on

3

cross-examination that more than six months passed before Zamora e-mailed Garcia. Defense counsel then asked if Zamora had any other contact with Garcia. Zamora answered: only one e-mail, some five to ten telephone conversations, and about three meetings. The first meeting was about two days before trial and lasted an hour. The other two meetings were in the witness room at the courthouse.

## B. The Disputed Testimony – Redirect Examination of Zamora

After a bench conference outside the hearing of the jury, the State asked Zamora why she contacted Garcia in May 2010. Zamora testified that she decided to contact Garcia after learning in March 2010 of an incident involving appellant and another woman. Zamora did not elaborate on what happened between appellant and the other woman. She explained that after learning about the other incident, she contacted Garcia because she felt she needed to "put a stop to it," for Garcia's sake and her own.

Zamora testified appellant held her against her will and beat her in October, 2009. Appellant slapped, punched, and kneed her day and night, and in the course of doing so, told her that he could get away with it because "he had done it before." Zamora testified that appellant told her what he had done to Garcia. Zamora contacted the district attorney's office in March 2010, and told them about her own case and in May 2010, she encouraged Garcia to report her incident to the district attorney. Garcia came forward as a result of Zamora's encouragement.

## II. STANDARD OF REVIEW AND DISCUSSION

Appellant argues the trial court erred by admitting Zamora's testimony about the other woman and by allowing Zamora to testify regarding the context in which appellant

4

admitted to her the aggravated kidnapping of Garcia. Appellant argues this evidence was inadmissible extraneous-offense evidence under Texas Rules of Evidence 401 (definition of relevant evidence), 402 (admissibility of relevant evidence), 403 (exclusion of relevant evidence), and 404(b) (inadmissibility of other wrongs to show character). *See* TEX. R. EVID. 401–03; 404(b). A trial court's ruling on the admissibility of evidence is reviewed under an abuse-of-discretion standard. *Moses v. State,* 105 S.W.3d 622, 627 (Tex. Crim. App. 2003). If the trial court's ruling was within the zone of reasonable disagreement, there is no abuse of discretion. *Id.* Rarely should the trial court's decision be reversed and only after a clear abuse of discretion. *Id.*

## A. Preservation of Error

At oral argument, the State argued appellant only made a rule 403 objection at trial and therefore appellant's rule 404(b) and relevance complaints have not been preserved for our review. We find appellant raised the relevance complaint in the trial court, but agree with the State as to appellant's rule 404(b) complaint. Appellant's complaint under Texas Rule of Evidence 404(b) was not made in the trial court and thus has not been preserved for review. *See* TEX. R. APP. P. 33.1(a); *Medina v. State*, 7 S.W.3d 633, 644 (Tex. Crim. App. 1999) (holding relevancy objection does not preserve error concerning a rule 404 extraneous-offense claim); *Camacho v. State*, 864 S.W.2d 524, 533 (Tex. Crim. App. 1993) (same).

Twice, appellant's trial counsel objected on relevance grounds before the extraneous-offense evidence was admitted. At the conclusion of the bench conference concerning the admissibility of the extraneous-offense testimony, trial counsel asked for a

5

running objection that incorporated "all the arguments that we just made on the record." After clarifying the running objection would include "all the extraneous offenses," the trial court granted trial counsel's request for the running objection. Having carefully reviewed the record, we conclude appellant raised a timely relevance objection to the admission of the extraneous-offense evidence in the trial court and therefore the complaint is preserved for our review. *See Haley v. State*, 173 S.W.3d 510, 515–17 (Tex. Crim. App. 2005) (discussing preservation of error for appellate review); *Ethington v. State*, 819 S.W.2d 854, 858–9 (Tex. Crim. App. 1991) (discussing use of running objections to preserve error).

### B. Relevance Analysis

Appellant argues Zamora's testimony about an incident involving a third victim and appellant's abuse of Zamora was irrelevant. We disagree.

Texas Rule of Evidence 402 provides: "All relevant evidence is admissible, except as otherwise provided by Constitution, by statute, by these rules, or by other rules prescribed pursuant to statutory authority. Evidence which is not relevant is inadmissible." Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. TEX. R. EVID. 401; *Hudson v. State*, 112 S.W.3d 794, 800 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd) (citing *Montgomery v. State,* 810 S.W.2d 372, 386 (Tex. Crim. App. 1990) (op. on reh'g)). Relevance is not an inherent characteristic of any item of evidence, but exists only as that item of evidence relates to a matter properly provable in a case. *Hudson*, 112 S.W.3d at 800. Also, evidence need

6

not prove or disprove a particular fact to be relevant; it is sufficient if the evidence provides a "small nudge" towards proving or disproving a fact of consequence. *Id.* A witness's motive in providing testimony is never immaterial or collateral. *Castillo v. State*, 939 S.W.2d 754, 758 (Tex. App.—Houston [14th Dist.] 1997, pet. ref'd) (citing *Hooper v. State*, 494 S.W.2d 846, 848 n.1 (Tex. Crim. App. 1973)).

Appellant's statements to Zamora admitting what he had done to the complainant, Garcia, were an admission by appellant of the offenses for which appellant was on trial. *See* TEX. R. EVID. 801(e)(2) (setting forth that admissions by a party opponent are not hearsay). Whether appellant actually made the admission was a fact of consequence in determining the case against appellant. Appellant's cross-examination of Zamora undermined Zamora's claim that appellant made the admission to her in October 2009, because she did not act on the admission until March and May 2010. The cross-examination of Zamora also suggested Zamora testified about the admission because of a relationship she had established with Garcia. Thus, the extraneous-offense evidence was relevant to show Zamora's motive in testifying at trial and why she only acted on appellant's admission many months after he made the admission. *See Castillo*, 939 S.W.2d at 758.

The evidence concerning the extraneous offenses was also relevant in proving appellant's admission of the offenses against Garcia because it rebutted appellant's theory of the case. Extraneous-offense evidence is relevant if it rebuts a defensive theory. *Id.*; *see also Bargas v. State*, 252 S.W.3d 876, 890–91 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (discussing relevance of extraneous-offense evidence offered

for non-character purposes in the context of Rule 404(b)). Appellant's theory of the case, as expressed in opening statement and cross examination, was that Garcia's claims at trial were exaggerated and that appellant and Garcia simply argued or, at most, appellant committed a far less serious offense such as simple assault, "terroristic threat," unauthorized use of a motor vehicle and/or unlawful restraint. In defense counsel's opening statement and cross-examination of Garcia, she emphasized Garcia dropped her charges against appellant the day after the alleged offenses. During cross-examination, defense counsel elicited testimony from Garcia that she recanted her allegations against appellant. Defense counsel also emphasized that later the same weekend after the aggravated kidnapping, Garcia traveled in the same truck with appellant to her home in Abilene, where she stayed with appellant for ten days.

In defense counsel's opening statement, she also told the jury about post-incident "love letters" and examined Garcia about a love letter she wrote to appellant in April 2009. Defense counsel questioned Garcia about why the violence she described at trial seemed greater than that she first reported to police and whether she was arguing with appellant at the driver side door of her truck immediately after the alleged aggravated kidnapping. In light of the defensive theory that Garcia was an exaggerating ex-girlfriend who lacked credibility for not promptly coming forward as a victim, evidence tending to show appellant admitted the offenses to Zamora was relevant. *See Bass v. State*, 270 S.W.3d 557, 563 (Tex. Crim. App. 2008) (holding evidence of extraneous sex offenses was admissible to rebut defensive theory that complainant's accusations were fabricated where complainant made police report more than ten years after incidents on hearing her cousin

8

was also a victim). Zamora's nominal testimony about learning of a third woman in March 2010 and the context of appellant's admission concerning Garcia, was relevant to rebut the defense's theory of the case, by showing why Zamora waited several months to come forward and showing Zamora's impetus for coming forward about appellant's admission.

### C. Rule 403 Analysis

Having determined that the extraneous-offense evidence was relevant, we consider whether it should have been excluded under Rule 403. *See* TEX. R. EVID. 403. It is a firmly-rooted principle of criminal law that an accused only be tried for the offense charged and not for being a bad person or a criminal generally. *See Hudson*, 112 S.W.3d at 800. Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence. TEX. R. EVID. 403.

Courts should balance the following factors under a Rule 403 analysis: (1) the strength of the evidence in making a fact more or less probable, (2) the potential of the extraneous-offense evidence to impress the jury in some irrational but indelible way, (3) the amount of time the proponent needed to develop the evidence, and (4) the strength of the proponent's need for this evidence to prove a fact of consequence. *Bargas*, 252 S.W.3d at 892–93 (citing *Mozon v. State,* 991 S.W.2d 841, 847 (Tex. Crim. App. 1999)). When, as in this case, the record is silent as to the trial court's balancing of these factors, we presume the trial court conducted the balancing test. *See id.*

9

The first factor, the strength of the evidence to make a fact of consequence more or less probable, weighs strongly in favor of admissibility. Appellant's admission of the offenses for which he was on trial was significant and the admission was more likely in light of Zamora's testimony concerning her motive for finally acting on appellant's admission. The extraneous-offense evidence was probative to rebut appellant's theory that Zamora had testified to the admission because of her relationship with Garcia and that Garcia's claims were the exaggerations of an ex-girlfriend. *See id.* at 893. As to the second and third factors, though there was danger of impressing the jury in an indelible way and Zamora's extraneous-offense testimony carried some emotional weight, the trial court offered appellant a contemporaneous limiting instruction[2] concerning the purpose of the evidence, and the testimony was very brief and non-graphic. In particular, the testimony concerning the third victim was minimal. The second and third factors weigh in favor of admissibility of the extraneous-offense evidence. *See id.* The fourth factor, requiring balancing the State's need for such extraneous-offense evidence, also weighs in favor of admissibility because, as set forth above, proving appellant's admission was significant to the State's case in light of the defense's portrayal of the complainant as an exaggerating ex-girlfriend. *See id.*

We conclude the trial court did not abuse its discretion by overruling appellant's relevance and rule-403 objections to the extraneous-offense testimony elicited from

---

[2] No limiting instruction concerning the extraneous-offense testimony was given at or near the time Zamora's extraneous-offense testimony was received in evidence. *See* TEX. R. EVID. 105(a) (limited admissibility); *Hammock v. State*, 46 S.W.3d 889, 893–95 (Tex. Crim. App. 2001) (discussing time and procedure for obtaining a limiting instruction). The jury charge included a general limiting instruction that any extraneous-offense testimony could only be considered if it found beyond a reasonable doubt that appellant committed the extraneous offense and that such evidence could only be considered in determining appellant's motive, opportunity, intent, preparation, plan, or knowledge, if any, in connection with the charged offense(s). *See* TEX. R. EVID. 404(b).

10

Zamora on re-direct examination.   Appellant's sole issue on appeal is overruled.

## III.   CONCLUSION

We affirm the trial court's judgment.

GREGORY T. PERKES
Justice

Do not publish.   TEX. R. APP. P. 47.2(b).

Delivered and filed the
25th day of August, 2011.