COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS





JOSE LUIS JIMENEZ,

                                    Appellant,

v.

THE STATE OF TEXAS,

                                    Appellee. 

§
 
§
 
§
 
§
 
§

§


No. 08-08-00347-CR

Appeal from
 210th District Court

of El Paso County, Texas

(TC # 20080D02726)



 

 

 




O P I N I O N

            Jose Luis Jimenez appeals his conviction of felony driving while intoxicated. A jury found
Appellant guilty and assessed his punishment at imprisonment for a term of sixteen years. For the
reasons that follow, we affirm.
FACTUAL SUMMARY
            On the evening of May 18, 2008, El Paso police officer Sgt. Lawrence Lujan pulled into the
parking lot of a convenience store. There he observed Appellant run through a stop sign and stop
abruptly in the middle of the intersection. Lujan pulled his patrol car behind the vehicle and
instructed Appellant to drive into the parking lot. After Appellant complied, Lujan approached the
driver’s door with the intention of making routine inquiries associated with a traffic stop. Appellant
tried to exit the vehicle but Lujan instructed him to stay inside and asked for his driver’s license and
insurance. Lujan immediately observed that Appellant was disoriented and did not have “all his
faculties.” Appellant had difficulty retrieving his driver’s license and insurance card but he gave
them to Lujan along with other paperwork. Lujan asked Appellant whether he had any alcohol to
drink that day and Appellant mumbled but did not otherwise respond to the question. Based on his
observations, Lujan believed Appellant was “under the influence of alcohol.” Because Lujan is not
certified to administer the standardized field sobriety tests, he requested the assistance of another unit
to administer them. Officers Gabriel Castaneda and Orlando Diaz arrived with a couple of minutes
and Lujan briefed them on what had happened thus far and advised them that Appellant appeared
to be intoxicated. Diaz and Castaneda then approached Appellant’s vehicle.
            Officer Castaneda, who was at the passenger door, observed that Diaz appeared to know
Appellant. Diaz testified he had and Appellant had grown up together and he considered Appellant
a friend although they no longer socialized. Diaz asked Appellant how he was doing and Appellant
began saying that he was sorry and asked Diaz to let him go because he would not do it again. 
Appellant repeated these statements throughout the officers’ encounter with him. Diaz told
Appellant he could not let him go. Diaz observed that Appellant had bloodshot eyes, slurred speech,
and Diaz smelled alcohol on Appellant’s person. Diaz then turned the case over to Castaneda and
the officers asked Appellant to step out of the vehicle. Castaneda took Appellant by the arm because
it appeared he was going to fall. Appellant refused to perform the field sobriety tests while
continuing to ask the officers to let him go and promising not to do it again. Based on his
observations that Appellant had poor balance, watery eyes, slurred speech, and the smell of alcohol
on his person, Castaneda formed an opinion that Appellant was intoxicated and he placed him under
arrest for driving while intoxicated. At the police station, Appellant refused to provide a sample of
his breath for analysis. 
            A grand jury indicted Appellant for felony driving while intoxicated, enhanced by a prior
felony DWI conviction. The case went to trial and a jury found Appellant guilty as charged in the
indictment. At the punishment phase, Appellant pled true to the enhancement allegation. The jury
found Appellant guilty and assessed his punishment at imprisonment for a term of sixteen years. 
SHIFTING THE BURDEN OF PROOF
            In his first issue, Appellant argues that the trial court erred by overruling his objections to the
prosecutor’s final argument because it shifted the burden of proof to Appellant to produce evidence. 
The State responds that the issue is waived because Appellant failed to specifically object. 
            The following occurred during final argument:
[Prosecutor]: So let’s get back to the intoxication. You know, I don’t think I’ve
ever heard a defendant complain as much about what the evidence could have shown,
or what we might have, or what’s this evidence we’re missing this evidence, or make
a cry for more evidence who’s done so much to keep evidence from you. I mean,
didn’t even attempt to --
 
[Defense counsel]: Your Honor, may we approach the bench?
 
[The Court]: No, no. Go ahead. Go ahead.
 
[Prosecutor]: Didn’t even attempt to do the standard field sobriety tests. Requested
given -- I’m sorry was there a bench conference?
 
[The Court]: Well, I don’t know.
 
[Defense counsel]: Your Honor, there’s an objection, Your Honor. I think what he’s
doing is trying to shift the burden that we’re supposed to come forward with evidence
and that’s his argument.
 
[Prosecutor]: We’re talking about the occurrence, not this trial, Judge.
 
[The Court]: Okay, well, I’ll -- I’ll overrule at this time.
 
[Prosecutor]: Thank you. So he’s out there at the scene and there could have been
more evidence in this case, but who’s in control of that evidence? If he’s genuinely
interested in providing to anyone evidence of his sobriety he could do the
standardized field sobriety test. He could do the walk and turn, he could do the
horizontal gaze nystagmus, he could do the one-leg stand.
 
Of course this isn’t his first rodeo. Don’t be fooled by, Well, did you explain to him
what the test would consist of, or what the results might be. This isn’t his first rodeo. 
He knows exactly what the standardized field sobriety tests are. He knows what the
breathalyzer is. 
 
And who’s in control of getting that information to you? There’s the evidence that
you could have had but you don’t have. He refused to blow. Why did he refuse to
blow? That’s why we call it blow, give a breath sample. Because he knows he’s
intoxicated. 

After the State concluded its argument, the trial court asked the attorneys to approach the bench and
Appellant reurged his objection that the State had attempted to shift the burden with its argument.
The trial court sustained the objection and instructed the jury that the State had the burden of proof
and Appellant did not have any burden to prove his innocence. The court denied Appellant’s motion
for a mistrial. 
            Issue One is directed at the italicized portions of the argument set forth above. As noted by
the State, Appellant did not make contemporaneous objections to these parts of the prosecutor’s final
argument. Rule 33.1 requires a party to preserve a complaint for appellate review by making a
timely and specific objection. Tex.R.App.P. 33.1. To preserve error regarding improper jury
argument, a defendant ordinarily should (1) contemporaneously object to the statement; (2) request
an instruction that the jury disregard the statement if the objection is sustained; and (3) move for a
mistrial if the instruction is granted. Cooks v. State, 844 S.W.2d 697, 727-28 (Tex.Crim.App. 1992). 
Further, a defendant must object each time the impermissible argument is made, or the complaint
is waived. Wilson v. State, 179 S.W.3d 240, 249 (Tex.App.--Texarkana 2005, no pet.); Dickerson
v. State, 866 S.W.2d 696, 699 (Tex.App.--Houston [1st Dist.] 1993, pet. ref’d); see Ethington v.
State, 819 S.W.2d 854, 858 (Tex.Crim.App. 1991)(to preserve error in the admission of evidence,
a party must continue to object each time the inadmissible evidence is offered). One exception to
the requirement of a contemporaneous objection is when the defendant obtains a “running”
objection. Ethington, 819 S.W.2d at 858. Appellant did not request a running objection to the
argument. Because Appellant failed to object to the specific portions of the argument he complains
of on appeal, we find that he failed to make a contemporaneous objection to each instance of
allegedly improper final argument. The trial court’s sua sponte reconsideration of the only objection
made by Appellant did not satisfy the requirement for a contemporaneous objection to the other
instances of allegedly improper argument.
            Even assuming that the complaint is preserved for appellate review, and further assuming that
the prosecutor’s argument was improper, we find that the instruction given by the trial court would
have cured any prejudice. See Castillo v. State, 939 S.W.2d 754, 762 (Tex.App.--Houston [14th
Dist.] 1997, pet. ref’d)(concluding trial court’s instruction to disregard cured any error resulting from
State’s argument shifting burden of proof to defendant). Therefore, the trial court did not abuse its
discretion by denying Appellant’s motion for a mistrial. See Hawkins v. State, 135 S.W.3d 72, 85
(Tex.Crim.App. 2004). Issue One is overruled.
ARGUMENT REFERRING TO DEADLY CONDUCT
            In Issue Two, Appellant argues that the State made an improper final argument by referring
to the manner in which Appellant operated his vehicle as “deadly conduct” and by stating that
Appellant could have killed someone. Appellant asserts that the argument is speculative and outside
of the record. 
            The prosecutor made the following argument:
[Prosecutor]: He blew right through the crosswalk and into the intersection; he could
have killed somebody. And has somebody been killed by this type of behavior in this
community? Think about it. Yes, they do. This is deadly, deadly conduct. And
when it happens once, twice, thrice, this is something we cannot tolerate. And we
cannot tolerate this. We need to say we have to stop. He promises, I will never do
this again. Well, he’s had a chance not to do it again. Not once but twice and so on. 
He’s here. And we have to do something about this.

Later, the prosecutor argued:
 
But the people of this community also have rights. We should feel we have the right
to get out there and drive around this community without having fear that some guy
who -- it’s not his first DWI or his second. Here he is, you know, running a stop sign
-- and killing us or our loved ones or someone. It doesn’t matter who. A child, an
old person, a young person. There’s only one group in this courtroom that could put
a stop to it as far as this guy’s concerned, and that’s you. 

Appellant did not raise any objection to this argument. It is well established that a defendant must
object to improper final argument in order to preserve error. See Cockrell v. State, 933 S.W.2d 73,
89 (Tex.Crim.App. 1996). Citing several cases which pre-date Cockrell, including Miller v. State,
741 S.W.2d 382 (Tex.Crim.App. 1987) and Romo v. State, 631 S.W.2d 504 (Tex.Crim.App. 1982),
Appellant relies on an exception to the requirement of a contemporaneous objection. Cockrell
abolished this exception. Having failed to object to the argument, Appellant did not preserve this
issue for our review. Accordingly, we overrule Issue Two.
ADMISSION OF ORAL STATEMENTS
            In Issue Three, Appellant contends that the trial court erred by failing to suppress his oral
statements because he was not given his Miranda


 warnings prior to making the statements. The
State replies that Appellant’s oral statements were not the product of custodial interrogation, and
therefore, the trial court did not abuse its discretion by denying the motion to suppress.
Standard of Review
            We review a trial court’s ruling on a motion to suppress evidence under a bifurcated standard
of review. Amador v. State, 221 S.W.3d 666, 673 (Tex.Crim.App. 2007); Guzman v. State, 955
S.W.2d 85, 89 (Tex.Crim.App. 1997). We give almost total deference to a trial court’s rulings on
questions of historical fact and application-of-law-to-fact questions that turn on an evaluation of
credibility and demeanor, but we review de novo application-of-law-to-fact questions that do not turn
on credibility and demeanor. Amador, 221 S.W.3d at 673; Estrada v. State, 154 S.W.3d 604, 607
(Tex.Crim.App. 2005).
            When the trial court has not made a finding on a relevant fact, we view the evidence in the
light most favorable to the trial court’s ruling and assume the trial court made implicit findings of
fact supported by the record. Herrera v. State, 241 S.W.3d 520, 527 (Tex.Crim.App. 2007). We
will uphold the trial court’s ruling if it is reasonably supported by the record and is correct under any
theory of law applicable to the case. State v. Dixon, 206 S.W.3d 587, 590 (Tex.Crim.App. 2006).
Custodial Interrogation
            Appellant sought to suppress testimony by Officers Castaneda and Diaz that Appellant
repeatedly stated during their encounter with him that he was sorry, he would not do this again, and
to please let him go. The State argues that Appellant’s statements were not made in response to
interrogation by the officers, and therefore, the officers’ failure to Mirandize Appellant did not
require suppression of the statements.
            Article 38.22 and Miranda do not apply unless the accused’s statement is the result of
custodial interrogation. Tex.Code Crim.Proc.Ann. art. 38.22, § 5 (Vernon 2005); Dowthitt v.
State, 931 S.W.2d 244, 263 (Tex.Crim.App. 1996). Custodial interrogation occurs when a person
in custody is subjected to direct questioning or its functional equivalent, which occurs when police
officers engage in conduct that they know is likely to elicit an incriminating response. Rhode Island
v. Innis, 446 U.S. 291, 300-01, 100 S.Ct. 1682, 1689-90, 64 L.Ed.2d 297 (1980). This definition of
“interrogation” focuses primarily upon the perceptions of the suspect, rather than the intent of the
police. Moran v. State, 213 S.W.3d 917, 923 (Tex.Crim.App. 2007), citing Innis, 446 U.S. at 301,
100 S.Ct. 1682, 64 L.Ed.2d 297 (subjective intent of police officer to obtain incriminating statement
not relevant to determining whether an interrogation has occurred). Off-hand remarks, not designed
to elicit any kind of response, do not constitute interrogation. Innis, 446 U.S. at 303, 100 S.Ct. at
1691. Further, questioning normally attendant to arrest and custody is not interrogation. Innis, 446
U.S. at 300-02, 100 S.Ct. at 1689-90; McCambridge v. State, 712 S.W.2d 499, 505 (Tex.Crim.App.
1986).
            The record reflects that Appellant first made the statements in response to Diaz asking
Appellant how he was doing when he and Castaneda first approached the vehicle. When Diaz asked
Appellant to exit his vehicle, Appellant repeatedly asked Diaz to let him go. Castaneda then asked
Appellant to perform the standardized field sobriety tests, but Appellant refused. Appellant
repeatedly asked the officers to let him go while promising that he would not do it again. Castaneda
escorted Appellant to the patrol car, did a pat-down search, and asked him again to perform the
standardized field sobriety tests. Appellant repeated the same request to be let go and promise not
to do it again. At that point, Castaneda informed Appellant he was under arrest for DWI and he
placed him in handcuffs. The trial court found, based on its review of the video recording at the
scene, that Appellant was not in custody until Officer Castaneda handcuffed Appellant and informed
him he was under arrest for DWI. Further, the court ruled that Appellant’s post-arrest statements
were not admissible. 
            Appellant argues, as he did in the trial court, that he was in custody from the moment the
officers asked him to exit the vehicle. We need not determine this issue because we find that none
of the challenged statements were made in response to interrogation or its functional equivalent. 
Diaz’s initial greeting “how are you doing” is not interrogation. Likewise, the officers’ request that
Appellant perform the standardized field sobriety tests is not interrogation or its functional
equivalent. See Jones v. State, 795 S.W.2d 171, 176 (Tex.Crim.App. 1990)(holding that a request
to perform field sobriety tests and directions on how suspect is to do tests do not constitute
“interrogation”). Given the absence of evidence establishing that the challenged statements were the
product of custodial interrogation, the trial court did not err by refusing to suppress them. Issue
Three is overruled.
STIPULATION
            In Issue Four, Appellant asserts that the trial court erred by failing to properly instruct the jury
regarding his written stipulation to his two prior DWI convictions because it permitted the jury to
utilize the evidence of his prior convictions as proof that he drove while intoxicated in the instant
case. Appellant did not object to the charge on this ground.
            When reviewing charge error, we first determine if an error actually exists in the charge.
Middleton v. State, 125 S.W.3d 450, 453 (Tex.Crim.App. 2003); Almanza v. State, 686 S.W.2d 157,
171 (Tex.Crim.App. 1984), superseded on other grounds by rule as stated in Rodriguez v. State, 758
S.W.2d 787 (Tex.Crim.App. 1988). If there is charge error, we must then determine if the error
caused sufficient harm to warrant reversal. Hutch v. State, 922 S.W.2d 166, 170-71 (Tex.Crim.App.
1996); Almanza, 686 S.W.2d at 171. Preservation of charge error does not become an issue until we
assess harm. Ngo v. State, 175 S.W.3d 738, 743 (Tex.Crim.App. 2005). The degree of harm
necessary for reversal depends on whether the defendant preserved the error by objection. Id. When
the defendant fails to object, as in this case, we will not reverse for jury charge error unless the
record shows “egregious harm” to the defendant. Id. at 743-44; Almanza, 686 S.W.2d at 171.
            Under the Almanza egregious harm standard, the record must show that a defendant has
suffered actual, rather than merely theoretical, harm from the jury instruction error. Almanza, 686
S.W.2d at 174. Egregious harm consists of errors affecting the very basis of the case or that deprive
the defendant of a valuable right, vitally affect a defensive theory, or make the case for conviction
or punishment clearly and significantly more persuasive. Saunders v. State, 817 S.W.2d 688, 692
(Tex.Crim.App. 1991). Egregious harm is a difficult standard to prove and must be determined on
a case-by-case basis. Ellison v. State, 86 S.W.3d 226, 227 (Tex.Crim.App. 2002). To determine
whether a defendant has sustained egregious harm from an instruction to which he did not object,
we consider (1) the entire charge; (2) the state of the evidence, including contested issues; (3)
arguments of counsel; and (4) any other relevant information revealed by the record of the trial as
a whole. Allen v. State, 253 S.W.3d 260, 264 (Tex.Crim.App. 2008); Hutch, 922 S.W.2d at 171.
            A jury charge must distinctly set forth the law applicable to the case and set out all of the
essential elements of the offense. Martin v. State, 200 S.W.3d 635, 639 (Tex.Crim.App. 2006). This
requirement includes jurisdictional elements. Id. Thus, the jury charge must inform the jury of the
existence of the two prior DWI convictions that the defendant has stipulated to and that the State
relies upon for conviction of a felony DWI offense. Id. In Martin, the Court of Criminal Appeals
explained that a trial court can instruct the jury about the stipulated prior convictions in any of
several different ways. Id. One way is to include the specific indictment allegations of the two prior
DWI convictions in the application paragraph with a separate paragraph stating that the defendant
has stipulated to the existence of those two prior convictions, thereby establishing the jurisdictional
element. Id. This separate paragraph would also instruct the jury to find that the jurisdictional prior
convictions may not be used for any other purpose in determining the guilt of the defendant on the
charged occasion. Id. Another way is to simply charge the elements of the underlying DWI offense
and include a paragraph stating that the defendant has stipulated to the existence of two (specified
or unspecified) prior DWI convictions, and thus the jury is directed to find that those elements of
felony DWI are established. Id. The court acknowledged that the parties and trial judge may devise
other, entirely satisfactory, instructions to inform the jury of the existence of the defendant’s
stipulation and of its effect. Id. Further, the trial judge is authorized to give other limiting
instructions appropriate to the case. Id.
            Here, Appellant and the State entered into a written stipulation regarding Appellant’s prior
DWI convictions. The jury was informed of the existence of the stipulation during voir dire and the
stipulation was admitted into evidence at the beginning of the State’s case-in-chief. Appellant did
not object to the charge or otherwise bring to the trial court’s attention that the charge failed to
instruct the jury regarding the legal effect of the stipulation. The application paragraph of the charge
required the jury to determine whether Appellant had previously been convicted of the two prior
DWI offenses alleged in the indictment, but it did not specifically address the stipulation. However,
the charge instructed the jurors that they could not consider the evidence admitted regarding the prior
DWI convictions as proving or tending to prove that Appellant was driving while intoxicated in the
instant case. 
            The charge is erroneous because it failed to reference the stipulation or instruct the jury
regarding its legal effect. See Martin, 200 S.W.3d at 641. In support of his argument that egregious
harm exists in this case, Appellant points to the prosecutor’s statement during final argument that
Appellant refused to take the breathalyzer test or perform the field sobriety tests because “This isn’t
his first rodeo.” The prosecutor made the comment in apparent response to the defensive theory that
Appellant did not perform the field sobriety tests because the officers did not explain what tests they
were going to have Appellant perform or what would be expected of him. It is permissible for the
State to argue that a defendant’s refusal to take the breathalyzer is evidence of guilt. See Bartlett v.
State, 270 S.W.3d 147, 153 (Tex.Crim.App. 2008) (concluding that evidence of refusal to submit
to breath test is relevant in DWI case as it “tends to show consciousness of guilt”); see also
Tex.Transp. Code Ann. § 724.061 (Vernon 1999) (providing that refusal of request to submit to
breath or blood test is admissible at trial). To the extent the prosecutor’s argument could be
construed as suggesting that the jury consider Appellant’s prior convictions as evidence of his guilt
in this case, it was counterbalanced by the trial court’s instruction in the charge that the jury could
not consider the prior convictions as evidence that Appellant was driving while intoxicated in the
instant case. Generally, we presume that the jury followed the trial court’s instructions. See Moore
v. State, 882 S.W.2d 844, 847 (Tex.Crim.App. 1994). Further, the prosecutor mentioned the
stipulation during final argument and urged the jury to not convict Appellant simply because he had
prior DWI convictions because to do so would be “improper” and “immoral.” The prosecutor stated
that the evidence of the prior convictions was introduced solely to establish jurisdiction and the
stipulation made the prior convictions a non-issue. Under these facts, we find that the absence of
an instruction on the legal effect of the stipulation did not result in egregious harm to Appellant. 
Issue Four is overruled.
FINAL ARGUMENT
            In Issue Five, Appellant contends that the prosecutor made an improper final argument by
creating a false impression that Appellant’s counsel had hidden evidence from the jury.


 He argues
that the prosecutor’s argument informed the jury that the DVD had been redacted.
            Permissible jury argument generally falls into one of four areas: (1) summation of the
evidence; (2) reasonable deduction from the evidence; (3) an answer to the argument of opposing
counsel; or (4) a plea for law enforcement. Berry v. State, 233 S.W.3d 847, 859 (Tex.Crim.App.
2007); Underwood v. State, 176 S.W.3d 635, 639 (Tex.App.--El Paso 2005, pet. ref’d). When
determining if the prosecutor made an improper jury argument, we consider the remark in its context. 
Gaddis v. State, 753 S.W.2d 396, 396 (Tex.Crim.App. 1988); Rodriguez v. State, 90 S.W.3d 340,
364 (Tex.App.--El Paso 2001, pet. ref’d).
            During the suppression hearing, the parties and the court discussed remarks by Officer Diaz
on the original VHS recording that he knew Appellant and he had just gotten out of prison for a
DWI. These remarks were redacted from the original recording and the redacted version was copied
onto a DVD. At trial, the court admitted the redacted DVD into evidence and it admitted the original
VHS record for purposes of the appellate record. Defense counsel, however, utilized the original
VHS recording with the sound turned off for purposes of cross-examination. During closing
argument, defense counsel made a lengthy argument criticizing the police officers for failing to place
Appellant in front of the camera during the roadside encounter. Referring to the video, defense
counsel argued:
And you can look at it. Take it with you. And see if he’s using the vehicle to stand
up or if he’s just there with these three individuals around him. And they said that
he stumbled out of the vehicle. You look at it, see if he stumbles out. Because they
have to prove that he lost his normal faculties, physical faculties. And that’s what
they want to use for you -- to make you believe that.
 
But you know what the biggest thing about it, ladies and gentlemen, is? And that’s
why I harped on it. Because it’s their responsibility to bring you the best evidence. 
It’s their responsibility, not ours. He didn’t have the responsibility of saying, You
know what, guys, take me in front of the vehicle. That way if you think I have
slurred speech, I’ll talk in [sic] and you can hear my slurred speech. Take me in front
of the camera and I’ll show you my glassy eyes. Or red bloodshot eyes. That’s the
best evidence. And that’s their responsibility to bring it to you.
 
Now, what did Officer Castaneda say? Because he’d just been through the academy,
he says, Yes, we’re trained that the best thing to do is you get somebody down, you
take him in front of the vehicle and you question him there.
 
Why do you do that? Because you preserve the evidence. You don’t keep him on
the side of a vehicle where you can’t see. You [sic] can’t bring you evidence that an
individual has red, bloodshot eyes, that he has slurred speech, that he’s stumbling
when he’s behind the vehicle or out of view. The best evidence -- and they know it. 
All three of them have been trained. But you, ladies and gentlemen, are the judges
of the credibility of those police officers, because Officer Castaneda testified that he
was under the supervision of Officer Diaz. 

Moments later, defense counsel argued:
 
But that picture


 does not show he’s intoxicated. Remember it’s their burden. And
they have to prove each and every element. They have to prove that he lost the use
of his physical faculties first. And because they say he stumbled or maybe fell one
time -- and you know what, ladies and gentlemen, if you’re going to be judged
because you stumble one time and they’re going to accuse you of being intoxicated,
that’s wrong. That burden is wrong.
 
What else do they have to show? That he lost -- he walked away, went to the back
and we couldn’t see what else he did back here. We don’t know how he walked. We
don’t know if he was jumping around or moving around. We don’t know because
we don’t see it on video, and it’s not our responsibility, it’s theirs. They could have
turned on the video. They knew. Why didn’t you turn on the video? Oh, we didn’t
feel it was necessary.
 
Ladies and gentlemen, it’s not necessary to you? Sure is necessary to me if I want
to know. And if I’m a juror I want to know these things. And I want to know how
an individual acts in front of a camera because that’s the best evidence, not just what
I’m going to say or somebody else is going to say. And they had it right there in their
hands. They had that ability to bring that to you, and they didn’t. 

The prosecutor responded with the following argument:
Now, you saw the defendant. You saw him on the video. One interesting thing, the
defense attorney talks about how we’re hiding the evidence. We’re hiding the
evidence. But when he went back to review the DVD to find the inconsistencies he
didn’t play you the audio, did he? That’s not necessary. Why is that? Because when
you listen to the audio, you can hear the defendant -- 

Defense counsel objected to the argument on the grounds that the State was arguing outside of the
evidence and was referring to matters which had been excluded from evidence. Outside of the jury’s
hearing, the trial judge reminded defense counsel that he could have used the redacted DVD with
audio for his cross-examination but he had chosen to instead use the original VHS videotape with
all of audio silenced. The court then overruled the objection. The prosecutor proceeded to argue
as follows: 
He didn’t want you to hear what his client was saying. Paraphrasing, Please, please
let me go. Let me go. I won’t do it again. 

            Appellant first argues that the prosecutor’s argument is improper because defense counsel
did not accuse the State of hiding evidence. The argument set forth above demonstrates that defense
counsel stated that it was the police officers’ job to make Appellant look as bad as possible and they
did this by intentionally not putting him in front of the camera where he could have demonstrated
that he was not intoxicated. Although defense counsel did not use the words “hiding evidence,” it
certainly could be inferred from his argument that the State had hidden evidence from the jury. We
find that the prosecutor’s argument was proper because it answered the argument of defense counsel. 
See Goldberg v. State, 95 S.W.3d 345, 388 (Tex.App.--Houston [1st Dist.] 2002, pet. ref’d)(holding 
that prosecutor’s comment during closing argument, that they “did not want defendant’s story
coming in without him telling the story,” was not improper comment on defendant’s refusal to
testify, but was in response to defendant’s argument that State was hiding evidence favorable to 
defendant by objecting to admission of defendant’s statements to police).
            We also understand Appellant to argue that the argument was outside of the record because
it informed the jury that the DVD had been redacted. The prosecutor’s argument that defense
counsel turned off the audio during cross-examination because he did not want the jury to hear
Appellant telling the officers he would not do it again and to let him go, was not outside of the record
because the jury had already heard evidence that Appellant had repeatedly made these statements
during his encounter with the police officers. As such, the argument was a proper summation of the
evidence. Further, after reviewing the prosecutor’s argument in context, we conclude that the
prosecutor did not inform the jury that the DVD had been redacted nor did it invite the jury to
speculate regarding what had been redacted. Issue Five is overruled.
VIOLATION OF THE SUPPRESSION ORDER
            In Issue Six, Appellant argues that the State violated the suppression order by introducing
into evidence statements Appellant made to Sgt. Lujan when he was placed under arrest. During
trial, Lujan testified that the other officers took Appellant to the rear of the vehicle and after
Appellant made his final refusal to not perform the field sobriety tests, he observed Diaz and
Castaneda place Appellant under arrest. Lujan then testified, without objection, that when Appellant
was at the rear of the vehicle, he overheard Appellant stating, “I’m sorry, I’m sorry. . . . I won’t do
this anymore.” Appellant argues that admission of this evidence violated the trial court’s order
suppressing Appellant’s post-arrest statements. As noted by the State, Appellant did not raise any
objection to admission of this evidence. 
            To preserve an issue for appellate review, a timely and specific objection is required. Layton
v. State, 280 S.W.3d 235, 239-40 (Tex.Crim.App. 2009); Tex.R.App.P. 33.1(a); Tex.R.Evid.
103(a)(1). When a pretrial motion to suppress evidence is denied, a defendant is not required to
subsequently object at trial to the same evidence in order to preserve error on appeal. See
Tex.R.Evid. 103(a)(1). Rule 103(a)(1) does not excuse a party from objecting when evidence is
admitted in alleged violation of a pretrial ruling. Because Appellant failed to object, he waived any
error in the admission of this evidence. We overrule Issue Six and affirm the judgment of the trial
court.

January 12, 2011                                                         
                                                                                    GUADALUPE RIVERA, Justice

Before Chew, C.J., McClure, and Rivera, JJ.

(Do Not Publish)